WILLIAM HODSON, as Commissioner of Public Welfare of the City of New York, Plaintiff, *v.* NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM, Defendant.

First Department, March 8, 1935.

*Seymour B. Quel* of counsel [*Paxton Blair* with him on the brief; *Paul Windels, Corporation Counsel*, attorney], for the plaintiff.

*Paul Van Anda* of counsel [*Spence, Hopkins & Walser*, attorneys], for the defendant.

GLENNON, J.   The plaintiff is the commissioner of public welfare of the city of New York.   The defendant is the New York City Employees' Retirement System.   The plaintiff demands judgment: (1) That the defendant pay to him, pursuant to a warrant of seizure,

dated February 27, 1934, the sum of $335.67, which represents the accumulated deductions and interest to the credit of Carl Foster in the annuity savings fund, together with interest, for the support and maintenance of the said Carl Foster's abandoned wife and child. (2) That, upon payment to the plaintiff of the aforesaid sum of $335.67, the defendant be and hereby is released from all liability to Carl Foster or any one claiming under him the aforesaid moneys.

On the other hand, defendant asks for a judgment vacating the warrant of seizure herein, dated February 27, 1934, against the accumulated deductions and interest in the possession of the defendant to the credit of Carl Foster.

Instead of setting forth the entire agreed statement of facts, we have adopted the following *résumé* thereof, which is undisputed:

" On January 26, 1934, one Eva Foster made an affidavit before the Court of Domestic Relations, Borough of Manhattan, charging her husband, Carl Foster, with having abandoned her and her minor child. She applied to the Court for the issuance of a warrant of seizure against certain monies due to the defendant under the New York City Employees' Retirement Acts and in the possession of the defendant. This application was supported by an affidavit by the plaintiff, the Commissioner of Public Welfare of the City of New York, alleging that the said Eva Foster and her child were in danger of becoming public charges. No notice of this application was given to Carl Foster, the husband, for the reason as alleged in the affidavit of Eva Foster that he had absconded and left the jurisdiction, thereby making impossible the service of a warrant previously issued on the charge of abandonment. * * *

"Accordingly on February 27, 1934, a warrant of seizure was duly issued by the Court of Domestic Relations authorizing the plaintiff to seize all the right, title and interest of Carl Foster to the sum of $333.48 in the possession of the defendant. This sum was due to Carl Foster by reason of the fact that he was formerly a Court Attendant in the Municipal Court of the City of New York, having entered the City service on May 1, 1929, and having resigned on December 31, 1932. The sum in question represented his accumulated deductions and interest in the fund.

" The defendant refused to pay the sum in question to the plaintiff because of the provisions of Section 1723 of the Greater New York Charter, which provides as follows:

" ' Section 1723. The right of a person to a pension, an annuity or a retirement allowance, to the return of contributions, the pension, annuity, or retirement allowance itself, any optional benefit, any other right accrued or accruing to any person under the provisions of this chapter and the moneys in the various funds created under

this chapter, are hereby exempt from any state or municipal tax, and shall not be subject to execution, garnishment, attachment, or any other process whatsoever, and shall be unassignable except as in this chapter specifically provided.' "

It is conceded by both sides that the sole question for this court to decide is whether or not defendant was justified, under section 1723 of the Greater New York Charter, in refusing to make payments to the plaintiff. An examination of the authorities coupled with the provisions of the law pertaining thereto has convinced us that plaintiff is entitled to judgment.

While section 1723 of the charter exempts from execution, or from any other process, the moneys in the funds created under the provisions of the chapter covering pensions, still the procedure followed here is *quasi* criminal in character and, consequently, the exemption contained in the section does not apply. The words written into the section by the Legislature were undoubtedly designed to protect a member of the retirement system against ordinary civil process. Section 921 of the Code of Criminal Procedure provides that: " a. When the father, or the mother absconds from the children, or a husband from his wife, * * * leaving any of them, chargeable or likely to become chargeable upon the public," a warrant of seizure may issue against any property belonging to the absconding parent. Not only did Foster desert his wife when she was in dire need, but in addition thereto, he feloniously abandoned his child, a boy twelve years of age, in destitute circumstances, thereby violating section 480 of the Penal Law.

In *Zwingmann* v. *Zwingmann* (150 App. Div. 358) it appeared that the husband had removed from the State for the purpose of avoiding the payment of alimony under a judgment of separation. He made the point that his property could not be sequestered for the payment of alimony because section 352 of the charter, relating to the police pension fund, read, in part, as follows: " moneys, securities and effects of the police pension fund, and all pensions granted and payable from said fund shall be and are exempt from execution and from all process and proceedings to enjoin and recover the same by or on behalf of any creditor or person having or asserting any claims against, or debt or liability of, any pensioner of said fund." Mr. Justice WOODWARD said: " We do not believe the Legislature, in creating the police pension fund and exempting it from execution and other processes, ever intended that this exemption should be construed to deprive the wife of her legal and moral right to the support of her husband. The whole purpose of the statute is served when the fund is pre-

served for the use of the pensioner and those legally dependent upon him for support and maintenance; when it is held intact for the care of the woman who is, in law, but a part of himself and entitled, with him, to share in the pension. This is in strict analogy with the doctrine of *Wetmore* v. *Wetmore* (149 N. Y. 520, 528, 529), and this court should not be astute in discovering a way to relieve the defendant of his obligations, voluntarily assumed, because of any strict construction of the language of an act which was designed to give protection to the faithful servants of the public and those dependent upon them." (See, also, *Weigold* v. *Weigold*, 236 App. Div. 126; *Monck* v. *Monck*, 184 id. 656.)

The defendant makes the point that the debtors in the cases cited had notice of the application, whereas here Foster has had no notice and, consequently, it argues that it may be subject to double liability if the pensioner's property is turned over to the plaintiff.

Section 922 of the Code of Criminal Procedure reads, in part, as follows:

"§ 922. Seizure of their property; transfer thereof, when void. The officers so applying may seize and take the property, wherever it may be found in the same county; and are vested with all the right and title thereto which the person absconding then had."

The constitutionality of this section and also the other procedural sections then in force covering the subject-matter was upheld in the case of *Coler* v. *Corn Exchange Bank* (250 N. Y. 136) and later affirmed under the title of *Corn Exchange Bank* v. *Coler* (280 U. S. 218). Mr. Justice McREYNOLDS in delivering the opinion for the Supreme Court of the United States, said: " That the appellant bank under some remote possibility may be called upon to pay a second time is true; but when voluntarily contracting with the depositor it knew this and accepted the consequent responsibility. Under the approved practice there was abundant opportunity to make defense — to require proof of all essential facts. At all events, its position is not materially worse than that of a debtor who must pay one who holds letters testamentary issued upon proof of death, though in truth the creditor may be alive with power to repudiate the appointment. See *Scott* v. *McNeal*, 154 U. S. 34."

In order to obviate a possible double liability on the part of a stakeholder, section 922-a of the Code of Criminal Procedure was passed. It reads as follows:

"§ 922-a. Notice of inquiry. The officers applying for said warrant shall after the filing of the inventory cause notice of the time and place of the inquiry provided in section next succeeding

to be given to said alleged absconder by mailing the same at least two weeks prior to said inquiry to his last known address, if any be known, or by publishing the same in a newspaper published and circulating in the county in which the application for seizure is made at least once in the week preceding the day of such hearing or in such other manner as the court may direct."

The purpose of the enactment is quite apparent. It was written into the law to overcome any objections which might be predicated upon the due process clause of the Constitution, so as to protect the person who complies with the demands of the public officer to turn over the funds he holds against making a second payment in the event any question arose in the future as to the propriety of his act. We have reached the conclusion, therefore, that the defendant is amply protected in turning over to plaintiff the funds in dispute.

Judgment should, therefore, be directed in favor of the plaintiff, without costs.

MARTIN, P. J., McAVOY, O'MALLEY and TOWNLEY, JJ., concur.

Judgment directed in favor of the plaintiff, without costs. Settle order on notice.