**SCHLAEFER v. SCHLAEFER et al.**
No. 7277.

United States Court of Appeals for the

District of Columbia.

Decided Feb. 5, 1940.

Rehearing Denied March 18, 1940.

Vivian O. Hill, of Washington, D. C., for appellant.

Dorsey K. Offutt, Benjamin S. Minor, Arthur P. Drury, and John E. Powell, all of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and EDGERTON and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

Appellant secured a limited divorce from her husband, the individual appellee, in the District of Columbia November 2, 1934, when both parties were domiciled in the District. The decree required him to pay her $60 per month permanent alimony. Before it was entered he secured a Mexican divorce, characterized by appellant as a "mail order" one. Shortly thereafter he married another woman. He left the District December 20, 1934, as he claims with the intention of residing elsewhere permanently.

July 29, 1938, appellant filed her petition herein. She claimed that appellee was $160 in arrears in alimony payments, had reduced them to $40 per month in violation of the order and refused to pay more than that amount. In addition to other income, she alleged he receives $100 per month from appellee insurance company as disability benefit payments under two policies of insurance. She asked for sequestration of his property, its conversion into cash and application of the proceeds to pay arrears and future monthly instalments of $60 in alimony. Injunctions were sought to restrain the husband from receiving property or funds due him and the insurance company from paying over to him the disability benefits or other sums payable under the policies. The company, a foreign corporation alleged to be doing business in the District, was made a party defendant.

July 30, 1938, a rule issued to appellees to show cause why payments under the policies should not be sequestered and paid to appellant in accordance with her claim. Service of process was made on the company. On August 30, 1938, the individual appellee filed his "Special Appearance and Return," the first paragraph of which was in part as follows: "Comes now the defendant * * *, appearing specially and reserving his objections to the jurisdiction of this Court, and makes this return to the rule to show cause * * *, *and answers and moves to dismiss the petition* of the plaintiff * * *; and as grounds therefor defendant shows to the Court as follows: * * *" (Italics supplied)

The "return" alleged that appellee's domicil was then and had been since February 2, 1935, in California; that he was not then and had not been "since long prior to the institution of this sequestration proceeding, within the jurisdiction of this Honorable Court; that he does not now submit to the jurisdiction of this Court, but appears herein specially only, and submits this return, answer and motion to dismiss with full reservation of his objections to the jurisdiction of this Court of this proceeding or over his person." It then pleaded to the merits of the petition, admitting or denying substantive allegations and setting up new matter. It admitted receipt of the disability payments under the policies, and alleged that they did not constitute "debts" due appellee or "income" and that they are exempted specifically from process under Section 16a of the Life Insurance Act for the District of Columbia, Act of Congress of June 19, 1934, c. 672, 48 Stat. 1175, D.C.Code (Supp. IV 1938) tit. 5, sec. 220p. It asserted

further that the disability payments "are not in any event, even when and if they accrue and become debts owed to defendant, payable to defendant in the District of Columbia and that they will not be debts due the defendant in the District of Columbia, but that, under the express provisions of the policies, such payments will become payable at the Home Office [Newark, New Jersey] of the Company." ·

Special grounds stated to support the motion to dismiss the petition were that it was "fatally defective" in failing to state facts tending to show that there was property of the appellee located within the District or the court's jurisdiction; in failing "to allege that any debt is owed to this defendant in the District of Columbia" by the insurance company or others; for showing "on its face * * * that the sums sought to be reached by sequestration and injunction are mere future contingencies, which may or may not ripen into debts owed to this defendant," and that they are " 'disability benefit payments,' which are specifically exempted from the process of this Court by statute."

The "return and answer" was supported by appellee's affidavit tending to show establishment of his residence and legal domicil in California in 1935 and continued maintenance of them there since that time.

The insurance company answered the petition, setting forth facts, among others, concerning the issuance of the policies to appellee, and their terms, including the disability provisions; alleging that the policies provide for continuance of disability payments and waiver of premiums only during appellee's total and permanent disability and upon his making periodic proof that it continues; and asserting that such payments are not subject to sequestration herein: (1) because specifically exempted by statute; (2) "for the reason that said payments are not assets in existence at the time of the attempted sequestration, but on the contrary, that the obligation of making such payments is conditioned upon the compliance by the said Wallace Clayton Schlaefer with the conditions of the said policies;" and (3) because "this Court has no jurisdiction over such disability payments."

On consideration of "the motion * * * to dismiss the petition * * * *" and of "the returns to the rule to show cause," the court found that the object of the proceeding was to sequester the disability payments and that they were "monies paid or agreed to be paid 'on account of the disability from injury or sickness of any insured person,' within the meaning of" Section 16a. Its conclusions of law were that: "1. This proceeding is barred by Section 16a of the Life Insurance Act for the District of Columbia;" and "2. The petition should be dismissed for the want of jurisdiction to grant the relief prayed, and the rule to show cause should be dismissed by the Court." Accordingly, the petition was "dismissed" and the rule discharged. From this action the present appeal is brought.

I. The principal issues relate to the jurisdiction of the court and the applicability of Section 16a. It is not clear whether the court found itself lacking in jurisdiction of the persons of the defendants or in jurisdiction of the subject matter of the suit or in both.

We think the court had jurisdiction in both respects. No pretense is made that it failed to acquire jurisdiction of the person of the insurance company. It was "doing business" in the District, subject to process therein and properly served. As to the person of appellee Schlaefer, we think he has submitted to the court's jurisdiction by his voluntary appearance herein. It is true this was denominated in the caption "Special Appearance and Return," and that it specifically asserts that appellee appears only "specially * * * and with full reservation of his objections to the jurisdiction of this Court of this proceeding or over his person," as well as that "he does not now submit to the jurisdiction of this Court." Despite the "reservations" and denial of the court's power, the pleading went on to answer the allegations of the petition upon the merits, both as to matters of fact and matters of law, and moved for its dismissal. Allegations of the petition were admitted or denied and new matter was introduced in defense of appellee's reduction of the monthly payments. Special grounds were stated in support of the motion to dismiss, as set forth above. The alleged "Special Appearance and Return," therefore, attempted to combine in one pleading the following functions: (1) A special appearance in objection to the court's jurisdiction of the defendant's person; (2) an objection to the court's jurisdiction of the subject matter of the cause; (3) a return to the rule to show cause; (4) a motion to dis-

miss the petition; and (5) an answer to the petition on the merits, both as to fact and as to law.

■ Prior to September 16, 1938, when the new Federal Rules of Civil Procedure became effective, 28 U.S.C.A. following section 723c, it was established clearly in this jurisdiction that a defendant, by pleading to the merits before the court had ruled on his special appearance in objection to its jurisdiction of his person, waived his objection to the jurisdiction.[1] Likewise, it was well established in other jurisdictions that where pleadings or motions relating to the merits were mingled with the plea to the jurisdiction, the latter was waived and a general appearance resulted.[2] This rule received our approval in relation to actions at law in Manning v. Furr, 1933, 62 App.D.C. 281, 66 F.2d 807. But in Herzog v. Hubard, 1938, 68 App.D.C. 383, 98 F.2d 255, we reaffirmed our previous decision in Ryan v. McAdoo, 1917, 46 App. D.C. 117. In these cases we held that in proceedings in equity a rule should be applied which is different from that applicable at law under Manning v. Furr. Specifically the ruling was that a special appearance is not waived under former Equity Rule 29, 28 U.S.C.A. following section 723, by mingling with it defenses "in point of law arising upon the face of the bill." Neither case, however, extended the rule to a pleading which combines a special appearance with defenses not of that character. Objections of law arising on the face of the bill were required to be taken, under that rule, by motion to dismiss, others by answer. The purpose of the rule was to simplify the procedure and expedite the litigation in equity causes by requiring the defendant to make all of his objections in these two types of response. It was intended to get rid of demurrers, pleas in abatement, etc., by successive filing of which the defendant could string out the litigation in a series of preliminary objections, generally of jurisdictional character, before reaching the merits. This was accomplished by requiring that all such objections be raised in a single motion to dismiss, leaving meritorious defenses to be raised by answer. Obviously this could not be done if the previously prevailing rule were retained that mingling a special appearance with other preliminary objections of this sort waived it. But there was no such necessity concerning objections proper to be made by answer under the rule. And none of the cases cited applied or purported to apply to such objections. We think therefore that the previously prevailing rule continued in force as to objections properly raised by answer, and consequently that the rule of Ryan v. McAdoo and Herzog v. Hubard has no application to this case. As we have said the "return" here combines not only a special appearance and other jurisdictional objections, properly to be taken by motion to dismiss, but also others appropriate to be taken only by answer, both by way of denial and by allegation of affirmative matter. As the pleading combines the functions of a return to the rule, a motion to dismiss and an answer, it falls within the rule of Manning v. Furr, and not within that of Herzog v. Hubard and Ryan v. McAdoo. Appellee Schlaefer's appearance was filed August 30, 1938. In view of what has been said, the court then acquired jurisdiction of his person under the law prevailing at that time. It was complete in all respects.

■ However, the new Rules of Civil Procedure provide: "No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion." Rule 12(b). The provision appears to be applicable, in terms, as well to objections to the court's jurisdiction, whether of the

---

[1] Orinoco Co. v. Orinoco Iron Co., 1924, 54 App.D.C. 218, 296 F. 965, appeal dismissed, 1924, 265 U.S. 598, 44 S.Ct. 461, 68 L.Ed. 1199; cf. Totten v. Harlowe, 1936, 66 App.D.C. 373, 88 F.2d 755.

[2] Crawford v. Foster, 7 Cir., 1898, 84 F. 939; Christensen v. Christensen, D. C.N.Y.,1926, 14 F.2d 475; Dickey v. Turner, 6 Cir., 1931, 49 F.2d 998; cf. Collins v. Finley, 9 Cir., 1933, 65 F.2d 625. The assertion in the pleading that the appearance is "special" only does not make it so if in fact it is not limited to the sole purpose of challenging jurisdiction. Davis v. Davis, 1938, 305 U.S. 32, 42, 59 S.Ct. 3, 83 L.Ed. 26, 118 A. L.R. 1518. In view of the appearance here, it is not necessary to determine whether the jurisdiction acquired by the court in the suit for limited divorce continues so that in the absence of the appearance the court nevertheless would have jurisdiction of the individual appellee for the purposes of this proceeding. Cf. Davis v. Davis, 1932, 61 App.D.C. 48, 57 F.2d 414.

person or of the subject matter, as to others. Id.; 1 Moore, Federal Practice (1938) 639, 649; (1940) 53 Harv.L.Rev. 493. But the rules did not take effect until September 16, 1938. Rule 86. It is provided further that the rules shall "govern all proceedings in actions brought after they take effect and also all *further* proceedings in actions then pending, except to the extent that in the opinion of the court their application in a particular action pending when the rules take effect would not be feasible or would work injustice, in which event the former procedure applies." (Italics supplied) Id. *"Further"* proceedings" clearly means those occurring after the effective date. To whatever extent the rules may be applicable in actions pending when they took effect, we do not believe the provision last quoted was intended to authorize or permit retroactive ouster of jurisdiction previously established and made complete. Such a construction not only would make Rule 12(b) a trap for unwary litigants, but would raise serious question as to its validity in such an application. The interest of a plaintiff, situated as appellant was here, in the court's maintenance of the jurisdiction of the defendant's person, once that is established in accordance with existing law, is sufficiently substantial to make it at least questionable whether an infringement of it would not go beyond the function of merely changing procedure. The act authorizing the formulation and promulgation of the rules provides that they "shall neither abridge, enlarge, nor modify the substantive rights of any litigant." Act of June 19, 1934, c. 651, § 1, 48 Stat. 1064, 28 U.S.C. § 723b, 28 U.S.C.A. § 723b. We need not consider to what extent changes in existing law concerning acquisition of jurisdiction of the person of a defendant may be "merely procedural" or "substantive" in wholly prospective operation. But when the effect of the change is to nullify retroactively a jurisdiction perfected and complete in accordance with existing law, and possibly in circumstances such that it could not be reestablished by subsequent action, we think the application goes beyond the purpose and intent of the rule, and possibly of the statute which underlies it. Cf. also Rule 82.

We think therefore that the court acquired complete jurisdiction of the persons of both defendants, appellees here, and that this has been affected in no respect by the subsequent taking effect of the Rules of Civil Procedure.

II. In our judgment this also disposes of the question concerning the court's jurisdiction of the subject matter of the suit. We are not required to determine whether a sequestration proceeding, such as the present one, intended to reach money owing from one defendant to another, would be without the court's jurisdiction if neither of the defendants were personally within the court's power; or if the creditor defendant were not so, the debt being payable to him by, and at the home office of, a foreign corporation brought within the court's authority solely by virtue of its "domestication" in the sovereignty of the forum. Neither case is presented by the facts. The argument seems to be that because the creditor defendant is a non-resident and his debtor a foreign corporation, the debt being payable at its home office, the court is without power to reach the debt by its process. It amounts practically to a contention that the debt has an exclusive situs at the place designated for payment, similar to that of real estate or to that commonly attributed to tangible personalty for taxation and other purposes.

It is true that "situs" is attributed even to intangible personalty for many legal purposes, such as taxation and distribution of decedents' estates. Likewise, the relation of debtor and creditor has been fixed geographically for purposes of attachment, garnishment, sequestration and the like, despite its traditionally transitory character in the common law.[3] But the purpose of these efforts to conjoin the relation with particular geographical and governmental units has been to extend rather than to restrict the enforceability of the debt. And the analogy of the proceeding in rem has been applied specifically for the purpose of making possible application of the proceeds of one debt to the payment of another, when the intermediate debtor-creditor could not be reached, but his debtor could be brought personally within the power of the court.[4] Harris v. Balk seems

---

[3] Cf. Goodrich, Conflict of Laws (1927) 126–131 and authorities cited and discussed.

[4] Harris v. Balk, 1905, 198 U.S. 215,

25 S.Ct. 625, 49 L.Ed. 1023, 3 Ann.Cas. 1084, and authorities affirming the doctrine of that case cited, Goodrich, Conflict of Laws (1927) 129, note 45. That the

designed to extend jurisdiction to the very case with which we would have been confronted, had the individual appellee not brought himself within the court's jurisdiction by the nature of his appearance. If the case were in that status, it might be necessary for the appellant to perfect the court's jurisdiction by giving published notice in accordance with D.C. Code 1929, tit. 24, § 378, in order to bring the case within the principle of Harris v. Balk. But even so, she should not be deprived of the opportunity to do this by premature dismissal of the suit such as was had here. However, whatever the case may have been at the beginning, it is now the simple one of a suit upon a valid personal obligation (the decree for alimony) against the obligor to reach money due the latter from another, both debtors being personally within the jurisdiction of the court. Whatever may be the need and the limits for application of theories of "situs" in other situations, the traditional and unimpaired transitory character of personal obligations dispenses with the need for such theories here, where all of the parties, creditor, debtor and debtor's debtor are before the court.[5] In such circumstances full justice can be done to all of them without depriving any of procedural or substantive rights whether in the proceeding or by the court's decree. That the debt sought to be sequestered is payable elsewhere or that the debtor who owes it is a foreign corporation is of no moment.[6]

III. The question remains whether the disability payments have been exempted by Section 16a or otherwise from application to appellant's claims for alimony.

Apart from the statute, no sufficient reason sustains such an exemption. Appellees apparently contend that the obligation to make these payments does not constitute a "debt," since it is not payable absolutely but only upon the contingency of and during the insured's total and permanent disability. Therefore, it is said, it cannot be reached by sequestration. The implicit assumption is that the obligation must be technically a "debt" in order to be sequestered. No authority is cited to sustain this view. However appellees rely upon an asserted analogy to McGrew v. McGrew, 1930, 59 App.D.C. 230, 38 F.2d 541, certiorari denied, 1930, 281 U.S. 739, 50 S.Ct. 349, 74 L.Ed. 1153, wherein we held that the unearned salary of a government employee is not subject to attachment, garnishment or other order of court requiring him to pay it over to his judgment creditor as earned. The decision rested chiefly on two grounds, the principle of governmental immunity and the fact that the salary had not been earned. Only the latter has semblance of pertinence here, and it has merely that. The contingency upon which the employee's salary was to become payable had not taken effect. He had not given the employer quid pro quo and might never do so. There was no presently existing obligation or claim, but merely the possibility that one would be created in the future. The opposite is the case here. The consideration for the insurance has been paid to the insurer. The

---

rule applies to domesticated foreign corporations, see Louisville & Nashville R. R. v. Deer, 1906, 200 U.S. 176, 26 S.Ct. 207, 50 L.Ed. 426; Baltimore & Ohio R. R. v. Hostetter, 1916, 240 U.S. 620, 36 S.Ct. 475, 60 L.Ed. 829.

[5] "If creditor, debtor, and garnishee are all before the court, there would seem to be no difficulty. The court has personal jurisdiction over the debtor; it has both the garnishee and his creditor, and its dealing with the debtor-creditor relation between them should be recognized elsewhere, no matter where the parties reside." Goodrich, Conflict of Laws (1927) 130, citing (note 47) McShane v. Knox, 1908, 103 Minn. 268, 114 N.W. 955. Cf. also Baltimore & O. R. R. v. Hostetter, 1916, 240 U.S. 620, 36 S.Ct. 475, 60 L.Ed. 829; Louisville & Nashville R. R. v. Deer, 1906, 200 U.S. 176, 26 S.Ct. 207, 50 L.Ed. 426.

[6] See Goodrich, Conflict of Laws (1927) 128, notes 42-45 and authorities cited.

The argument of appellees appears to imply that a foreign corporation domesticated in the District can be subjected to judgment by its courts only upon causes of action arising out of business transacted within the District. We are cited to no provision of the District statutes so restricting the authority of its courts. The situation is not that presented ordinarily in the non-resident motorist cases, where the statutes providing for substituted service limit the power of the court to cases involving injuries arising from accidents occurring in the state of the forum. Hess v. Pawloski, 1927, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091. Even if there were such a restriction, it does not appear from the record that the insurance policies here involved were not written in the District or were not the culmination of business done within its borders. Cf. also Neirbo Co. v. Bethlehem Shipbuilding Corporation, Ltd., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167.

disability has taken place and is now existing. Moreover, it is "total and permanent" by the admissions of both appellees. There is a presently existing, though continuing, liability of the insurer to the insured, not a mere contingency that one may be created in the future. True, there is the improbable possibility that the insured may recover from the disability, despite its "total and permanent" character. In that event or on the death of the insured, the payments are to cease. But these are not conditions precedent to accrual of the insurer's liability as is the earning of wages to that of an employer or as was the occurrence of the disability here. They are rather in the nature of conditions subsequent, whose part, if and when they materialize, is to put an end to a liability already existing. Futhermore, they are likely to occur (except the death of the insured) only in remotely, not to say merely mathematically, possible circumstances.

■■■ It is to be emphasized that the present proceeding is one in sequestration, not technically in attachment or garnishment. Although there are similarities common to all of these proceedings,[7] the statute of the District, D.C.Code 1929, tit. 14, § 70, empowers the court to "enjoin any disposition of the husband's *property* to avoid the collection of said allowances [of alimony], and * * * sequestrate his *property* and apply the income thereof to such objects." (Italics supplied) The act does not define "property." It is fairly to be implied from its purpose, however, that the term was not used narrowly. The making of provision for the wife's sustenance requires a liberal interpretation, to the extent, perhaps, of including all assets of the husband not otherwise specifically and clearly exempted from her claim. The Congress hardly can have intended to keep the wife alive if the husband has real estate, but allow her to starve if he owns only money or obligations. Nor does it violate the statute's language or purpose that the payments are and will continue to be made in instalments. Until the payments are due, they cannot be collected by the creditor or one claiming through him. But that does not prevent the court (sitting in equity as here) from directing that payment, when due, be made not to the creditor but to one whom it adjudges to have a superior right to the fund. We find nothing in' the nature of the property or the husband's interest which requires that it be put beyond the reach of the wife's claim. Nor do we see that the insurer has any other interest than to apply the payments so that it will be relieved of further liability on account of them. Its sole duty is to pay, when the conditions for its doing so have taken place. Although the policies designate the payments as "disability benefits," this does not make the insurer a trustee to see that the funds are applied to particular purposes by or for the benefit of the insured. It merely describes the condition upon which the payments are to be made, leaving the insured free to use them for paying expenses of illness or living or for squandering in whatever manner may please him.

The remaining question concerns the applicability of Section 16a, the exemption statute. It is as follows: "Exemption of disability insurance from execution.—No money or other benefit paid, provided, allowed, or agreed to be paid by any company on account of the disability from injury or sickness of any insured person shall be liable to execution, attachment, garnishment, or other process, or to be seized, taken, appropriated or applied by any legal or equitable process or operation of law, to pay any debt or liability of such insured person whether such debt or liability was incurred before or after the commencement of such disability, but the provisions of this section shall not affect the assignability of any such disability benefit otherwise assignable, nor shall this section apply to any money income disability benefit in an action to recover for necessaries contracted for after the commencement of the disability covered by the disability clause or contract allowing such money income benefit."

The act has not been construed heretofore in relation to a claim for alimony or support money. Nor have we found construction in this respect elsewhere of an identical statute. Appellees rely largely upon the language of the section, claiming it is clear and plain, allowing no room for interpretation. They assert also that the policy of the act would be defeated by a construction favorable to appellant since

---

[7] Cf. Garcia y Leon v. Galceran, 1871, 78 U.S. 185, 11 Wall. 185, 189, 20 L.Ed. 74; Stewart v. Potomac Ferry Co., C.C., 1882, 12 F. 296, 306; Gumbel v. Beer, 1884, 36 La.Ann. 484, 487.

that, it is said, would open the door to the possibility of the disabled person's becoming a public charge. To the contrary, appellant says that the very purpose of the exemption is "to secure a debtor the means of carrying on in times of unfortunate circumstances the main consideration being, it seems, for the protection of the family, wife and children." She asserts also that her claim is for "necessaries" within the statutory exception.

The basic issue boils down to whether Congress intended to relieve the disabled insured to the extent of his disability payments from legally enforceable obligation to support his family and those legally dependent upon him. So far as general creditors are concerned the purpose is clear, with the exceptions stated, to make the disposition of these funds a matter solely for his judgment. Congress regarded it as better for the creditors to go unpaid than to deprive the debtor and his dependents of this means of support when earning capacity would be cut off. Hence it used broad language prohibiting recourse to the fund by legal process. By removing it absolutely from the reach of such claims, to this extent it protected the insured from want during disability and the public from danger of his becoming a public charge. In ordinary circumstances also the exemption works a like protection of his dependents and of the public from their pauperization by his loss of earning power.

In determining whether the insured's legal dependents are to be classified, for purposes of the statute, with strangers holding claims hostile to his interest and their own or as being within its protective purpose, we may take into account the nature of the fund exempted, the purposes for which it ordinarily is created, the circumstances in which it becomes available to the insured and the uses normally made of it in those conditions. It is reasonable to assume that Congress had such things in mind when it created the exemption. The words "any debt or liability" are to be construed in the light of these factors, particularly when account is taken of the statutory exceptions for assignments and contracts for necessaries.

An important, often the primary, motivation for taking out disability insurance is protection of the family, not merely of its supporter. As has been said, the funds are not earmarked for limited and particular purposes. They are derived normally from the insured's earning power. They constitute a substitute for it when it is gone. By law and the most sacred contract he is obligated to employ it, while it exists, for dependents' support. Disability does not relieve him of that obligation, though it may affect the extent to which he can perform it. The obligation which he assumes upon marriage operates "in sickness and in health." Though he may not be able to work, if he has other means he is required to apply them equitably in the discharge of this duty. For the head of a family, the essentials of sustenance for his dependents remain "necessaries" as much when he is disabled as when he is well and employed. His disability does not terminate the wife's power to pledge his credit for them, whether for her own or for his children's support. Claims so created prior to any award of alimony or support money [8] appear to fall squarely within the letter and the purpose of the statutory exemption. An award of alimony or support money may destroy this power by giving her a substitute for it. But it does not destroy, on the contrary it enforces, the obligation from which the power is derived. It would be incongruous if the very act of enforcement should not only cut off her power to create in others legally enforceable claims for necessaries supplied to her, but also deprive her of any substitute for that power.

Furthermore, the usual purpose of exemptions is to relieve the person exempted from the pressure of claims hostile to his dependents' essential needs as well as his own personal ones, not to relieve him of familial obligations and destroy what may be the family's last and only security, short of public relief. The exemption, as contended for here, is not one which should be favored in legislation or in judicial construction. It can operate only in favor of a head of a family who appropriates to his exclusive sustenance or pleasure income received in times of adversity. That the disability income may be generous only goes to make the purpose of exemption less plausible. That it may be meager does not establish such purpose. The duty is to share, not to desert, when trouble comes.

---

[8] D.C.Code 1929, tit. 14, § 75.

This construction is not inconsistent with giving full effect to the statute. The protection remaining is broad, applying both to "debts" and to "liabilities." Furthermore, it renders the statute consistent with others which provide methods for enforcement of the husband's and the father's duty of support.[9] Any other would nullify them in circumstances where the disability payments constitute the sole source of livelihood, though they might be adequate to support the insured and all his dependents in luxury. We cannot believe that Congress intended to create an exemption so broad and so inconsistent with the policy which it has declared in other acts.

We think this construction consistent also with the pertinent authorities. The obligation on which appellant's claim is based is not a "debt" or a "liability" in the ordinary usages of those terms.[10] It is a duty of higher obligation. As has been said, it is not one within the usual purposes of exemption statutes.[11] Some, such as homestead exemptions, specifically indicate the purpose protective of the family and limit the protection to debtors who are the heads of families.[12] Others extend similarly limited exemption by more spe-

---

[9] Id.; also D.C.Code (Supp. IV 1938) tit. 14, § 63, D.C.Code, 1929, tit. 14, §§ 70 (discussed supra), 71, 72, 73. Cf. Hodson v. New York, etc., System 1935, 243 App.Div. 480, 278 N.Y.S. 16.

[10] Where the statute merely exempts ordinary property or wages from the payment of "debts," "claims of creditors," "debts and liabilities," the great weight of American authority is that claims for alimony, temporary or permanent, and support money are not barred. Littleton v. Littleton, 1932, 224 Ala. 103, 139 So. 335; Bates v. Bates, 1884, 74 Ga. 105; Caldwell v. Central of Georgia R. Co., 1924, 158 Ga. 392, 123 S.E. 708; Menzie v. Anderson, 1879, 65 Ind. 239; Pearson v. Pearson, 1915, 166 Ky. 91, 178 S. W. 1164; Stirgus v. Stirgus, 1935, 172 Miss. 337, 160 So. 285; Spengler v. Kaufman & Wilkinson, 1891, 46 Mo.App. 644; Walker v. Walker, 1933, 204 N.C. 210, 167 S.E. 818; Notes (1921) 11 A.L. R. 123; (1937) 106 A.L.R. 669, and authorities discussed. Cf. Yager v. Yager, 1936, 7 Cal.2d 213, 60 P.2d 422. The contrary is held in respect to "the earnings of a debtor, who is * * * the head of a family, for his personal services, or those of his family" within a time limited, which the statute declared to be "exempt from liability for debt," in Schooley v. Schooley, 1917, 184 Iowa 835, 169 N.W. 56, 57, 11 A.L.R. 110, by a court which divided 4-3. The case appears to stand alone on its facts and its authority is greatly weakened by the strong dissent of Salinger, J., as well as by corrective legislation enacted later. Iowa Code 1924, § 11763. The defendant had remarried following an absolute divorce from the plaintiff, and the majority opinion was based expressly upon the interest of the second wife and family in support from the husband's earnings, upon analogy to certain rulings relating to homestead exemption (cf. note 12, infra), not on the view that the exemption is intended for the benefit of the insured to the exclusion of his dependents. The unique feature is the exclusion of the divorced wife from this class and treatment of her claim as a mere civil "debt."

[11] "All laws exempting any portion of one's earnings from the process of garnishment are primarily based upon the necessity of exempting in behalf of a debtor, even against his just debts, something with which to care for his family or dependents as well as himself." Caldwell v. Central of Georgia R. Co., 1924, 158 Ga. 392, 123 S.E. 708, 709. "The plaintiff seeks by legal process to compel her husband to support her, as he is legally bound to do. If the appellant's construction of the statute is to prevail, then its enforcement against the plaintiff becomes the means of oppression, rather than of protection. This would entirely subvert the law, and defeat the intention of the legislature." Spengler v. Kaufman & Wilkinson, 1891, 46 Mo.App. 644, 650.

[12] It is the general rule that the homestead is not exempted from the wife's claim for alimony or support when the decree awarding it creates in express language a lien against the homestead. See Notes (1921) 11 A.L.R. 123; (1937) 106 A.L.R. 669. But when the claim is asserted subsequently and against a husband who remains or again becomes the head of a family following the divorce, the usual result is to the contrary. Id. Obviously this is due to regard for the remaining or newly acquired dependents of the husband, not to concern for his personal freedom from enforcement of the wife's claim, since that does not exist when he has no other dependents. Whether the exclusion of the divorced wife under these circumstances from the class of dependents for whose benefit the homestead exemption is granted is consistent with her inclusion among those not barred by an exemption of wages from "debts," etc. (cf. note 10, supra),

cific definition of the claims excluded.[13] A few appear to grant absolute immunity until the fund reaches the exempted person's hands, often on the principle of governmental immunity when it is derived from governmental sources.[14] But even these have been held not to extend to claims for alimony and support of other legal dependents.[15] And language in gen-

eral exemption statutes containing no explicit exceptions has been held not applicable to such claims.[16] Broad statutory exceptions have been construed to include them.[17] While the analogies are not entirely free from conflict, the clear weight of their authority and the better considered reasoning supports the view we have taken.[18] Especially pertinent are the deci-

---

need not be determined. The analogy of the latter to disability insurance certainly is not more remote than that of the homestead. Cf. Yager v. Yager, 1936, 7 Cal.2d 213, 60 P.2d 422, holding the husband's wages subject to alimony despite a statutory exemption to the extent "necessary for the use of his family." The court said: "Within the meaning of this provision it may be said that the divorced wife and minor child of the first marriage, for whose support the husband has been ordered to pay a fixed sum, are in a sense members of his family entitled to participate with his second family in his earnings, and that the husband should not be permitted to urge the execution exemption against them." 7 Cal.2d 213, 60 P.2d 426.

13 E. g., Menzie v. Anderson, 1879, 65 Ind. 239, 240, "debt growing out of, or founded upon a contract, express or implied;" Littleton v. Littleton, 1932, 224 Ala. 103, 139 So. 335, 336, "debt contracted."

14 In re Irish, 1932, 51 Idaho 604, 9 P.2d 501; Riker v. Riker, 1936, 160 Misc. 117, 289 N.Y.S. 835, involving soldiers' compensation payments, exempted by World War Adjusted Compensation Act § 308, as amended by Act July 3, 1926, § 3(a), 44 Stat. 827, 38 U.S.C.A. § 618 and Act Jan. 27, 1936, 49 Stat. 1099, 1101, 38 U.S.C.A. § 686c, the latter providing that the bond "shall *not* be *transferable, assignable,* subject to attachment, levy, or seizure under any legal or equitable process and shall be *payable only to the veteran* or, in case of death or incompetence of the veteran, to the representative of his estate." (Italics supplied, by way of contrast with the act involved here.) The result seems dictated as much by legislative and judicial solicitude for the veteran as by the breadth of the statutory language, in view of contrary consequences in cases involving wages (cf. notes 10, 12, supra) and pensions (cf. note 15, infra) under language scarcely less inclusive. Perhaps an even more compelling consideration, prior to the coming of such funds into the hands of the husband, is the inability of a state court to enforce a judg-

ment for their payment to the wife against the federal government. Whether they should be held exempt after coming into his possession, and if so, how long, may remain open questions until determined by the final authority. Cf., however, Tully v. Tully, 1893, 159 Mass. 91, 34 N.E. 79; Stirgus v. Stirgus, 1935, 172 Miss. 337, 160 So. 285, 286; Williams v. United States Fidelity & Guaranty Co., 1939, 71 App.D.C. 9, 107 F.2d 210 and authorities cited.

15 When the fund sought to be reached is pension or disability money, the courts have refused to apply the exemption though the language of the statute is general and contains no specific exceptions. Hollis v. Bryan, 1932, 166 Miss. 874, 143 So. 687; Stirgus v. Stirgus, 1935, 172 Miss. 337, 160 So. 285; Zwingmann v. Zwingmann, 1912, 150 App.Div. 358, 134 N.Y.S. 1077. Cf. Willen v. Willen, 1932, 121 Cal.App. 351, 8 P.2d 942; Hodson v. New York City Employees' Retirement System, 1935, 243 App.Div. 480, 278 N.Y.S. 16; Tully v. Tully, 1893, 159 Mass. 91, 34 N.E. 79. In Zwingmann v. Zwingmann, supra [150 App.Div. 358, 134 N.Y.S. 1078], the statutory language was: "are exempt from execution and from all process and proceedings to enjoin and recover the same by or on behalf of any creditor or person having or asserting any claims against, or debt or liability of, any pensioner of said fund;" and in Hodson v. New York City Employees' Retirement System, supra [243 App.Div. 480, 278 N.Y.S. 17]: "shall not be subject to execution, garnishment, attachment, or any other process whatsoever."

16 Cf. the preceding note.

17 Willen v. Willen, 1932, 121 Cal.App. 351, 8 P.2d 942.

18 On the one hand, accepting the authorities as they stand, are the applications of the exemptions in cases of soldiers' compensation payments (note 14, supra) and homesteads when liens are not declared in the decree creating the award (note 12, supra). On the other, the exemption is refused when the fund consists of wages and other ordinary property (note 10, supra), pensions and dis-

sions in New York involving the applicability to claims for support and alimony [19] of statutes exempting pensions of retired or disabled public employees. We can discover no substantial difference between the statutes and situations presented by those cases and those involved here. [20]

We have made no point of the fact that the divorce here is a limited, not an absolute one. Under the authorities cited and discussed, it does not appear that the distinction is material, except to make the result more clear and the reasons for it more positive, [21] and possibly to change the result when the exemption is of a homestead and the wife's effort to reach it is made subsequently to an award for support which creates no specific lien on the property. Supporting the view that alimony creates a duty of more compelling character than mere "debt" or civil liability for tort are other considerations of policy than mere reparation for civil injuries. Among these are the interest of the public that the cast-off wife not become a public charge, the release of the husband from the wife's power to pledge his credit for her sustenance, and her sur-

render of rights in the nature of dower. Except the last, and not always excluding it, these considerations apply with equal or greater force when the divorce is, as here, a limited, not an absolute one. In such a case the bond of marriage is not dissolved and the award is, therefore, closely akin to one solely for support money. [22]

As the record stands, the status of the parties has not been altered by any occurrence subsequent to the decree rendered in the District Court. We do not pass upon the validity of the Mexican divorce or of appellee's subsequent remarriage. Those questions are not now before us. Neither could we assume their legal effectiveness as against appellant's claim, if that were material. The case presented, therefore, is one in which we must regard the legal relation of husband and wife as continuing at least until the contrary is shown, for whatever force that may add to the appellant's contentions.

The order is reversed and the cause remanded to the trial court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

ability payments (notes 15, 17, supra), and homesteads where the decree awarding the wife's claim expressly creates a lien upon it (note 12, supra). The peculiar considerations underlying the action taken with regard to the former classes have no pertinence to disability payments by private insurers. On the other hand, those sustaining denial of the exemption in the latter classes apply to them with equal force. The function of disability insurance is basically to serve as a substitute for wages and in this it is identical with that of pensions, particularly when they are provided for retirement. Of the two possible analogies, the latter is the more in point.

[19] See especially Zwingmann v. Zwingmann, 1912, 150 App.Div. 358, 134 N.Y.S. 1077. Cf. Hodson v. New York City Employees' Retirement System, 1935, 243 App.Div. 480, 278 N.Y.S. 16.

[20] The pension is a substitute for earning power as are the disability payments. The language of the exemption is fully as broad as that presented here. The claims are substantially identical.

[21] Although it seems to make no difference in the result whether the divorce is absolute or limited, or the alimony temporary or permanent, or even that the award is for support of children rather than merely the wife, the language of the opinions seems somewhat more positive in finding a "duty," rather than a "debt" when separation only, not dissolution of the marriage tie, is involved. Cf. Zwingmann v. Zwingmann, 1912, 150 App.Div. 358, 134 N.Y.S. 1077, referring to the legal unity of husband and wife, a reason hardly sufficient to sustain the court's evident and equal solicitude for their children's claims to maintenance; Pearson v. Pearson, Caldwell v. Central of Georgia R. Co., Stirgus v. Stirgus, all cited supra note 10; also Tully v. Tully, cited supra note 14.

[22] We have not considered it material that the appellee has other income as a retired naval officer or that the appellant is the designated beneficiary, without right of change by appellee, in the policies from which the disability payments are derived.