## Matter of Grega

*Jacob Schiffman,* for Commonwealth.

*F. J. Beckley,* for Veterans Administration.

VALENTINE, P. J., April 9, 1956.—This case was argued before all members of the court.

The essential facts upon which its disposition depends may be summarized as follows:

On June 27, 1945, after due hearing before Judge Fine, Emil P. Grega was adjudged incompetent and Joseph B. Grega appointed guardian. The order of court directed that the guardian enter security in the sum of $2,500. Joseph Grega furnished no bond, but undertook the performance of his duties as a result of which there remained on deposit in the First National Bank of Freeland the sum of $68.04 to his credit as guardian.

Upon application of the Commonwealth, setting forth that Joseph Grega, guardian, had been a patient in the United States Veterans Hospital at Lyons, New Jersey, had been discharged therefrom and his present whereabouts unknown, he was removed as guardian and Ralph Johnston appointed substituted guardian. Mr. Johnston duly qualified, filed a bond in accordance with the order of his appointment and entered upon

the performance of his duties. In due course he filed an account showing a balance of $3,187.10 in his hands for distribution. Of the total amount of $3,737.04, handled by the guardian, the sum of $3,669.00 came "from the Veterans Administration funds".

At the audit of the account, counsel for the Commonwealth sought reimbursement for the care and maintenance of the incompetent at the Danville State Hospital from May 5, 1943, to September 19, 1945, and after the incompetent's readmission to the hospital for the period from August 12, 1946, to July 30, 1953. The amount claimed by the Commonwealth for the support and maintenance of the incompetent was $5,513.96. The total charge for support amounted to $5,873.96.

This amount has been reduced by a credit of $360, representing a payment, allegedly made by the Veterans Administration on August 24, 1953.

When the case was called for argument, counsel representing the Veterans Administration was advised that by reason of the provisions of the Act of April 24, 1929, P. L. 647, which had not been previously called to our attention, the first exception was well taken and that the same was, therefore, sustained.

The sole question for determination is the correctness of the order directing that the sum in the hands of the guardian be paid to the Commonwealth, as a partial reimbursement for the amount expended in the care and maintenance of the incompetent. The answer to this question depends upon the construction to be given section 454a of 38 U. S. C., Act of August 12, 1935, 49 Stat. at L. 609, as amended, which provides:

"Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be

exempt from *the claims of creditors,* and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."

Counsel for the Veterans Administration contend that by reason of the provision that payments made to veterans shall be exempt from the "claims of creditors", the Commonwealth should not be reimbursed because it must be regarded as a creditor. This contention unduly emphasizes the word *creditor* and defeats the over-all purpose of the provision for exemption which was to insure the use of the funds for the maintenance and care of the veteran.

It is, of course, true that in the ordinary acceptation of the word *creditor* the Commonwealth must be so regarded, but the controlling question here is as to the intention of Congress in making use of such word. The act established a system for the relief of persons who were disabled in the military service of the United States. The broad purpose of the exemption under consideration was to protect the beneficiary against extortion or improvident bargains: Calhoun v. Massie, 253 U. S. 170, 173.

"The purpose in view is for consideration when the true meaning of statute or rule is sought": Hines v. Stein, 298 U. S. 94, 98.

The government created the benefits and provided for the exemptions in order that the incompetent might receive proper care and attention and not become a public charge: In re Todd's Estate, 243 Iowa 930, 54 N. W. 2d 521.

Numerous authorities in which the meaning of the word *creditor* has been considered clearly hold that the word as used in the section under consideration is not all-embracing.

In Hollis v. Bryan, 166 Miss. 874, 143 So. 687, the court said, page 880: "We are of the opinion that the

term 'creditors' used in the federal act has reference to an ordinary contractual obligation by which creditors and debtors are created."

In re Giambastiani's Estate, 1 Cal. App. 2d 639, 37 P. 2d 142, it was held that a brother of an incompetent, who had acted as guardian de facto, and who sought reimbursement for the advances made, was entitled to reimbursement from the funds of the Veterans Administration and that the amount expended by him did not constitute a "creditor's claim".

In re Bagnall's Guardianship, 238 Iowa 905, 29 N. W. 2d 597, it was held that a *judgment* for alimony is not a *debt* in the ordinary acceptation of the term and that the exemption provision in the veterans' statutes had no application. To the same effect is Hannah v. Hannah, 191 Ga. 134, 11 S. E. 2d 779; Arms' Com. v. Arms, 260 Ky. 634, 86 S. W. 2d 542; Schlaefer v. Schlaefer, 112 F. 2d 177; Hollis v. Bryan, supra.

The objection to the allowance of the claim, as stated by counsel for the Veterans Administration, was "claims of creditors prior to the appointment of a guardian are not payable out of veterans administration funds".

It is, therefore, conceded by counsel that if a guardian had been functioning at the time care and attention were furnished by the State, the allowance of the claim presented by the Commonwealth would be proper, but in what way has the veteran been prejudiced by reason of the fact that at the time he was cared for by the Commonwealth no guardian was acting? This is no ordinary debt of the incompetent. It is a claim for board, care and maintenance in a State Hospital at Danville, furnished by reason of the fact that the incompetent was, at said time, a ward of the State, he having been committed to said institution under The Mental Health Act of July 11, 1923. He is

now an inmate of the Veterans Administration Hospital at Lebanon.

We think it would be a strained construction of the statute, which had for its purpose the care and maintenance of the incompetent, to hold that the exemption prevents reimbursement to the State for care and maintenance furnished him. When the incompetent acquired an estate, regardless of the source from which the funds were so acquired, they should be available for the reimbursement of the State for hospital care furnished.

As stated by our Supreme Court in Arnold's Estate, 253 Pa. 517, at page 519:

"Moved by the dictates of humanity, the State makes provision for the care of the indigent insane, in cases where there is no one legally liable for their support, or where such person or persons by reason of poverty are unable to discharge that duty. But there is no warrant whatever, for charging upon the State the burden and expense of caring for those who have estates sufficient for their maintenance."

The judges are all of the opinion that the allowance of the claim was proper and that this conclusion is amply supported by the decision of the Supreme Court of Michigan in Lewis' Estate, 287 Mich. 179, 283 N. W. 21, wherein the chief justice, at page 186, said:

"We are not here concerned with actions by creditors seeking to turn the pension to satisfaction of their demands, but only with the question of reimbursement of the state for care and maintenance. *Certainly the pension protective law does not intend the fund for the welfare of the beneficiary and then, under restrictions thereof, after receipt by the beneficiary, prevent employment thereof for care and support of the pensioner.*

"At the time the guardian of the pension beneficiary received the pension money she was a ward,

not only of the probate court but, as well, upon her commitment for hospitalization, a ward of the state. The State asks no more than the guardian was, in duty and of necessity, obligated to provide by way of support, care and maintenance of the ward.

"The State, under humanitarian legislation, has assumed the care and maintenance of the insane pension beneficiary and, by statute, has provided means and measures for reimbursement and we do not think that, under such circumstances, Congress intended to consider the State in the class of barred creditors. The exemption in the pension law serves its purpose in holding that in the hands of the guardian and under order of the court, of which the beneficiary is a ward, the money is not exempt from employment in reimbursing the State, under statutory provisions, for the expense of care and maintenance of the ward."

Therefore, now, April 9, 1956, at 2 p. m., the exceptions, other than the first, are dismissed, and the order of distribution approved.