RANDOLPH, Justice,
dissenting:
¶ 34. The Majority asserts that this case presents “competing interests,” including “the supremacy of federal law over state law” and “the compelling public interest in child support.” (Maj. Op. at ¶ 1). The Majority also discusses “the compelling public interest in the protection of the mentally disabled.” (Maj. Op. at ¶ 1). SSI benefits are payable to those over 65, the blind, and the disabled. See 20 C.F.R. § 416.110 (2009). However, facts taken from the record do not establish that Barnes is “mentally disabled” and “mentally infirm.” (Maj. Op. at ¶ 1) (emphasis added). The chancellor commented that “[tjhere’s been no evidence offered to the court of a showing of any adjudication of incompetency by a court of competent jurisdiction!,]” [11] and added that Barnes’s obligation arose “out of the procreation of a child without regard to whether he had contractual capacity.”[12] Accordingly, I cannot agree that the case sub judice requires consideration of “the compelling public interest in the protection of the mentally disabled.” (Maj. Op. at ¶ 1).
¶ 35. Furthermore, the Majority’s analysis fails to affirm the chancellor who recognized the chancery court’s constitutional obligation to protect minors. Under the Tenth Amendment to the United States Constitution, “[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people.” U.S. Const, amend. X. The law of domestic relations has long been recognized by the United States Supreme Court as “belong[ing] to the laws of the States and not to the laws of the United States.” Rose v. Rose, 481 U.S. 619, 625, 107 S.Ct. 2029, 2033-34, 95 L.Ed.2d 599 (1987) (quoting In re Burrus, 136 U.S. 586, 593-94, 10 S.Ct. 850, 852-53, 34 L.Ed. 500 (1890)).
*20 ¶36. The Mississippi Constitution established that our chancery courts are exponents of defenseless and helpless children. See Miss. Const, art. 6, § 159(d) (“[t]he chancery court shall have full jurisdiction in the following matters and cases, viz.: ... (d) Minor’s business....”). This Court has stated that:
[I]ong ago it became the established rule for the court of chancery to act as the superior guardian for all persons under such disability. This inherent and traditional power and protective duty is made complete and irrefragable by the provisions of our present state constitution. It is not competent for the Legislature!;[13]] to abate the said powers and duties or for the said court to omit or neglect them. It is the inescapable duty of the said court and of the chancellor to act with constant care and solicitude towards the preservation and protection of the rights of infants and persons non compos mentis. The court will ... rescue them from faithless guardians, ... and even from unnatural parents, and in general will and must take all necessary steps to conserve and protect the best interest of these wards of the court. The court will not and cannot permit the rights of an infant to be prejudiced by any waiver, or omission or neglect or design of a guardian, or of any other person, so far as within the power of the court to prevent or correct.
Union Chevrolet Co. v. Arrington, 162 Miss. 816, 138 So. 593, 595 (1932) (emphasis added). To further this purpose, our Legislature has enacted laws to protect minors through the provision of child support. See Miss.Code Ann. §§ 43-19-31 to 43-19-103 (Rev.2009).
¶ 37. As regards the Supremacy Clause, the United States Supreme Court rightfully has declared:
“[o]n the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has ‘positively required by direct enactment’ that state law be pre-empted.” [Hisquierdo v. Hisquierdo, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979),] quoting Wetmore v. Markoe, 196 U.S. 68, 77, 25 S.Ct. 172, 175, 49 L.Ed. 390 (1904). Before a state law governing domestic relations will be overridden, it “must do ‘major damage’ to ‘clear and substantial’ federal interests.” His-quierdo, supra, 439 U.S. at 581, 99 S.Ct. at 808, quoting United States v. Yazell, 382 U.S. 341, 352, 86 S.Ct. 500, 506, 15 L.Ed.2d 404 (1966).
Rose, 481 U.S. at 625, 107 S.Ct. 2029 (emphasis added). Under the facts presented, I cannot conclude that a withholding order directed to Barnes, requiring that he pay child support from his SSI benefits, does “ ‘major damage ’ to ‘clear and substantial’ federal interests,” after the SSI benefits are paid to the recipient. Id. (emphasis added). I find no legitimate reason that “[o]ur analysis must ... hinge on whether enforcement of a child-support order would impede Congress’ purpose in delivering SSI benefits!),]” and no support in the record that the judgment of the chancellor has impeded Congress’ purpose. (Maj. Op. at ¶ 25) (emphasis added). The issue should be limited to whether enforcement of said order would “do ‘major damage’ to ‘clear and substantial’ federal interests.” Rose, 481 U.S. at 624, 107 S.Ct. 2029.
¶ 38. The Majority acknowledges that Congress has expressed a strong federal interest in “facilitating] collection of child support from parents who receive Social *21 Security [b]enefits[,]” via the Federal Child Support Enforcement Act. See Maj. Op. at ¶ 15 (citing 42 U.S.C. § 659). While SSI benefits are not a form of “remuneration for employment,” such that Section 659 is inapplicable, that does not minimize the expressed federal interest in the provision of child support. Moreover, as noted by the United States Supreme Court in Rose, family law is controlled by state law, except in “rare” instances. See Rose, 481 U.S. at 625, 107 S.Ct. 2029. The Mississippi Court of Appeals twice has affirmed orders of child support from individuals whose sole source of income was SSI benefits. See Bailey v. Fischer, 946 So.2d 404 (Miss.Ct.App.2006); Lee v. Lee, 859 So.2d 408 (Miss.Ct.App.2003).
¶ 39. Fundamentally, the purpose of an exemption statute like the “Anti-Attachment Clause”:
is to protect the recipient and his family from the claims of creditors. Since family members fall into the protected category, there is no reason to allow the recipient to escape liability to his family.... [Additionally], alimony and child support are not a debt in the same sense as a debt owed to a creditor. As one court expressed it, they are “a duty of a higher obligation.”
Ex parte Griggs, 435 So.2d 103, 104 (Ala.Civ.App.1983) (quoting Schlaefer v. Schlaefer, 112 F.2d 177, 186 (D.C.Cir.1940)).
¶ 40. In Schlaefer, Anna Katherine Schlaefer (“Anna”) sought unpaid alimony from her ex-husband, Wallace Clayton Schlaefer (“Wallace”). Schlaefer, 112 F.2d at 179. Anna alleged that:
[i]n addition to other income, ... [Wallace] receives $100 per month from ap-pellee insurance company as disability benefit payments under two policies of insurance. She asked for sequestration of his property, its conversion into cash and application of the proceeds to pay arrears and future monthly installments of $60 in alimony.
Id. Wallace acknowledged receipt of the disability benefit payments, but contended that they were “exempted specifically from process under Section 16a of the Life Insurance Act for the District of Columbia, Act of Congress of June 19, 1934....”[14] Id. The district court agreed with Wallace and dismissed Anna’s petition. See Schlaefer, 112 F.2d at 180. The D.C. Circuit reversed and remanded. See id. at 187. According to that court, in an opinion authored by future United States Supreme Court Justice Wiley Blount Rutledge:
[t]he basic issue boils down to whether Congress intended to relieve the disabled insured to the extent of his disability payments from legally enforceable obligation to support his family and those legally dependent upon him. So far as general creditors are concerned the purpose is clear, with the exceptions stated, to make the disposition of these funds a matter solely for his judgment. Congress regarded it as better for the creditors to go unpaid than to deprive the debtor and his dependents of this *22 means of support when earning capacity would be cut off. Hence it used broad language prohibiting recourse to the fund by legal process. By removing it absolutely from the reach of such claims, to this extent it protected the insured from want during disability....
Id. at 185. However:
[b]y law and the most sacred contract [Wallace] is obligated to employ [disability benefit payments], while it exists, for dependents’ support. Disability does not relieve him of that obligation, though it may affect the extent to which he can perform it. The obligation which he assumes upon marriage operates “in sickness and in health.” Though he may not be able to work, if he has other means he is required to apply them equitably in the discharge of this duty. For the head of a family, the essentials of sustenance for his dependents remain “necessaries” as much when he is disabled as when he is well and employed. His disability does not terminate the wife’s power to pledge his credit for them, whether for her own or for his children’s support. Claims so created prior to any award of alimony or support money appear to fall squarely within the letter and the purpose of the statutory exemption.[15]
Id. (emphasis added). See also Stirgus v. Stirgus, 172 Miss. 337, 160 So. 285, 286 (1935) (“[t]he obligation of a husband to support his wife is not a debt in the sense of this statute, but is an obligation growing out of the marriage status and public policy... .”); Walker v. Walker, 204 N.C. 210, 167 S.E. 818, 819 (1933) (“the amount allowed for the support and maintenance of the infant ... is not an ordinary debt in the sense of a financial obligation against which the plaintiff may claim his homestead and personal property exemptions”); Littleton et al. v. Littleton, 224 Ala. 103, 139 So. 335, 336 (1932) (“[t]he decree for alimony ... was not a ‘debt contracted’ within the meaning of our Constitution and statutes ..., and the defendant’s claim of exemption as to the garnished sum was properly disallowed”); Caldwell v. Central of Ga. Ry. Co., 158 Ga. 392, 123 S.E. 708, 709 (1924) (quoting Bates v. Bates, 74 Ga. 105 (1884)) (“ ‘[a] decree for alimony stands upon a different basis from an ordinary debt.’ ... All laws exempting any portion of one’s earnings from the process of garnishment are primarily based upon the necessity of exempting in behalf of a debtor, even against his just debts, something with which to care for his family or dependents as well as himself. This is the only principle upon which a debtor should be permitted to withhold money within the power of the court from a creditor, the justness of whose claim is undisputed.”) (emphasis added). Based upon the aforementioned “duty of higher obligation[,]” as well as the fact that applying the exemption like the lower court “can operate only in favor of a head of a family who appropriates to his exclusive sustenance or pleasure income received in times of adversity[,]” the court concluded that “[w]e cannot believe that Congress intended to create an exemption so broad and so inconsistent with the policy which it has declared in other acts.” Schlaefer, 112 F.2d at 185-86.
¶ 41. A “higher-obligation” analysis is particularly persuasive. Has the United States Congress truly exempted parents *23 from honoring their primal obligation of nurture and protection of their offspring? [16] Certainly among “the Laws of Nature and of Nature’s God”[17] is an obligation of a parent to support his minor child. Barnes’s status as an SSI benefit recipient “does not relieve him of that obligation” and, in my estimation, he is required to apply such benefits “equitably in the discharge of this duty.” Schlaefer; 112 F.2d at 185.
¶ 42. Under the specific factual scenario presented (in which Barnes acknowledged that $100 of what he received monthly could be put toward child support), I cannot join opinions that subjugate not only the needs of an impoverished,[18] helpless two-year-old, but also the constitutional mandate to our chancery courts to exercise full jurisdiction over the business of minors under Article 6, Section 159(d) of the Mississippi Constitution.
¶ 43. Taking into account “the nature of the fund exempted, the purposes for which it ordinarily is created, the circumstances in which it becomes available ... and the uses normally made of it in those conditions[,]” Schlaefer, 112 F.2d at 185, I find the chancellor’s judgment to be eminently sound and based on established legal principles. Given the federal statutory expressions of interest in the provision of child support, along with the clear pronouncement of the United States Supreme Court in Rose, I fail to discern how enforcing an order requiring Barnes to honor an obligation to support his child does “ ‘major damage’” to any identifiable “‘clear and substantial federal interests.’ ” Rose, 481 U.S. at 625, 107 S.Ct. 2029. Rose recognized that state courts (learned in law and equity) are better suited to require an irresponsible parent to share a loaf of bread with his children than Congress. To rule otherwise would allow a parent to purchase cigarettes and beer, while at the same time depriving his or her child of formula or baby food. Therefore, I respectfully dissent.

. At tire hearing, Barnes testified to being previously employed, to possessing a Mississippi driver’s license, and to previously owning a car. Additionally, Barnes’s wife testified, pursuant to questioning from the chancellor, that Barnes was sufficiently competent to enter into a marriage ceremony. Moreover, Barnes merely referred to himself as "[sjpecial [e]d.”

.I note that the child at issue in this proceeding is from Fayette County, but Barnes has also fathered an illegitimate child in Claiborne County.

. This is no less true for the United States Congress.

. Section 16a provided, in pertinent part, that:
Exemption of disability insurance from execution. — No money or other benefit paid, provided, allowed, or agreed to be paid by any company on account of the disability from injury or sickness of any insured person shall be liable to execution, attachment, garnishment, or other process, or to be seized, taken, appropriated or applied by any legal or equitable process or operation of law, to pay any debt or liability of such insured person whether such debt or liability was incurred before or after the commencement of such disability....
Life Insurance Act for the District of Columbia, Act of Congress of June 19, 1934, c. 672, 48 Stat. 1175, D.C.Code (Supp. IV 1938) (emphasis added).

. The court added that:
the usual purpose of exemptions is to relieve the person exempted from the pressure of claims hostile to his dependents’ essential needs as well as his own personal ones, not to relieve him of familial obligations and destroy what may be the family's last and only security, short of public relief.
Id. (emphasis added).

.As well as giving SSI benefit recipients, as argued by MDHS, “carte blanche to procreate without any regard to a child's support and upbringing.” In the case sub judice, such disregard is evidenced by Barnes’s inability to recall the name of his two-year-old daughter at trial.

. The Declaration of Independence ¶ 1 (U.S. 1776).

. The child's mother receives Social Security benefits under Title IV-D.