946 So.2d 404 (2006)
Kenneth Campbell BAILEY, Appellant
v.
Melissa A. (Bailey) FISCHER, Appellee.
No. 2005-CA-00374-COA.
Court of Appeals of Mississippi.
May 30, 2006.
Rehearing Denied September 26, 2006.
Certiorari Denied January 4, 2007.
*405 Brent M. Bickham, Ocean Springs, attorney for appellant.
Timothy Lee Murr, Gulfport, attorney for appellee.
Before MYERS, P.J., SOUTHWICK and BARNES, JJ.
SOUTHWICK, J., for the Court.
¶ 1. The parties were divorced in 1989. In 2002, the ex-husband was found in contempt for non-payment of child support. He appeals, alleging that notice of the contempt hearing was not given and that his federal benefit payments could not be used for child support. We disagree and affirm.

FACTS
¶ 2. In a 1989 divorce decree by the Harrison County Chancery Court, Melissa Bailey (now known as Melissa Fischer) was given custody of the parties' one child, *406 a daughter born in 1986. Mr. Bailey was to pay child support. Several petitions for contempt have been filed by Ms. Fischer through the years. In 2002 she again sought to have him cited for contempt due to nonpayment of child support. It is agreed by the parties that a proper summons under Mississippi Rule of Civil Procedure 81 was given to Mr. Bailey, notifying him of a hearing to be held on June 5, 2002. The propriety of the legal process after that time is not agreed.
¶ 3. In a hearing held in December 2004, Timothy Murr, counsel for Ms. Fischer, stated that on June 4, 2002, Brent Bickham, counsel for Mr. Bailey, telephoned Murr requesting a continuance of the hearing that, according to the Rule 81 summons, was scheduled for the next day. Murr agreed to the schedule change. On June 21, 2002, the Harrison County Chancery Court Administrator issued a notice of the hearing for August 6, 2002. Both attorneys appeared for the August 6 hearing. Due to a full docket the chancellor postponed the matter. Both attorneys then went to the court administrator to set a new date. The administrator issued a notice for a hearing to be held on August 12. That hearing was held as scheduled. It resulted in Bailey being held in contempt. A capias was issued. On October 25, 2002, an agreed order for suspension of the capias and for Bailey's release from incarceration was entered. A review of Bailey's compliance with the court orders was set for every four months.
¶ 4. The matter was continued multiple times. Finally, a hearing was held on November 10, 2003. A review of the previous order and presentation of evidence on new matters occurred. Bailey was again found to be in contempt, with the contempt to be reviewed again on April 28, 2004.
¶ 5. Prior to the April hearing, Bailey received an award of U.S. Social Security benefits dating back to January 10, 2001. He immediately filed a motion to modify child support and to set aside all orders entered as of January 1, 2001. The review of contempt and the additional motions to set aside and modify support were all heard on April 28, 2004. The result was an order that reset the matter for June 25, 2004. This final review was concluded on June 28, 2004. The chancellor then ruled from the bench, with a written judgment later entered on August 13, 2004.
¶ 6. Bailey continued to dispute the decision and filed various motions, including one for a new trial. Delays in the hearings on the motions resulted in rescheduling orders by the court administrator. On February 4, 2005, the chancellor entered his final judgment, confirming jurisdiction for the earlier orders, including the contempt citation for nonpayment of support. That February order is the final trial court judgment from which appeal has been brought here.

DISCUSSION
ISSUE 1: Compliance with Civil Procedure Rule 81
¶ 7. Bailey argues that the chancellor did not have jurisdiction to hear the evidence that was used to prove his contempt. As we will discuss, Rule of Civil Procedure 81 mandates in certain actions, including proceedings for contempt, that special notice be served on a respondent for a hearing with a date, time and place specified. Bailey does not contest that there was proper service of process for the initial June 5, 2002 hearing. Instead, he argues that once the hearing was rescheduled for August 6, 2002, the court lost jurisdiction because no new Rule 81 summons was given.
*407 ¶ 8. The rule in question provides special procedures for special cases, such as for hearings on child support and contempt. M.R.C.P. 81(d)(2). When a contempt action is filed, notice of the initial decision and the procedures for continuances are as follows:
summons shall issue commanding the defendant or respondent to appear and defend at a time and place, either in term time or vacation, at which the [action or matter] shall be heard. Said time and place shall be set by special order, general order, or rule of the court. If such action or matter is not heard on the day set for hearing, it may by order signed on that day be continued to a later day for hearing without additional summons on the defendant or respondent. The court may by order or rule authorize its clerk to set such actions or matters for original hearing and to continue the same for hearing on a later date.
M.R.C.P. 81(d)(5).
¶ 9. The steps required under this rule are these: (1) initial summons with date, time and place for hearing; (2) if not heard at that time, a new date may be set by (a) order entered by the chancellor on the initial hearing date, or (b) court may by order or rule authorize the court clerk to set the rescheduled date and time. The initial hearing date was set in a Rule 81 summons, but the new dates and times were established by the Harrison County Chancery Court Administrator. Rule 81(d)(5) provides that the court's clerk, i.e., the Harrison County Chancery Clerk, may be authorized to set the new date. The chancellor explained in his opinion that the normal practice when a case cannot be heard on a particular day is for the attorneys to agree to another day at the office of the court administrator. The administrator then mails a notice for the new hearing to the attorneys. The chancery clerk is not involved in establishing these changes.
¶ 10. There is no evidence in the record that the chancellor by order authorized the court administrator to make the rescheduling decisions, nor is there any properly approved local rule for the relevant chancery court district permitting this procedure. It is on such discrepancies from the Rule 81 requirements that Bailey relies.
¶ 11. Mississippi caselaw has with some frequency discussed the special requirements of a Rule 81 summons. E.g., Powell v. Powell, 644 So.2d 269 (Miss.1994); Reichert v. Reichert, 807 So.2d 1282 (Miss.Ct. App.2002); Sanghi v. Sanghi, 759 So.2d 1250 (Miss.Ct.App.2000). The Supreme Court has held that the key consideration under Rule 81 is the adequacy of the notice of the date, time and place of the hearing. Vincent v. Griffin, 872 So.2d 676, 678 (Miss.2004). Sometimes there has been no Rule 81 summons at all to begin the new chapter in the pending domestic matter. Sanghi, 759 So.2d at 1254. However, if a proper summons is given that notifies the other party that a new controversy has arisen and of the date, time and place for a hearing, the rule itself provides that an order entered on the day of the initially-scheduled hearing obviates the need for any new summons for a hearing actually held on the later date. M.R.C.P. 81(d)(5). If no such order is entered, there should be a new Rule 81 summons. Id.; Vincent, 872 So.2d at 678.
¶ 12. We summarize the procedure followed here, which we have already detailed at greater length. A valid Rule 81 summons was issued to notify of the date, time and place to respond to Fischer's complaints about unpaid child support. The day before the scheduled hearing, the now-complaining party, through counsel, arranged with opposing counsel for a delay. *408 Without objection, the court administrator was the person with whom the parties discussed the change and is the official who sent the new notice. At the newly-scheduled hearing, this litigation was not reached due to the crowded docket. Both attorneys, again without objection, worked with the court administrator to negotiate a new date. At that agreed subsequent date, time and place, Bailey was found in contempt.
¶ 13. The clear purpose of Rule 81 is to give notice of new proceedings in dormant litigation in the manner that the state Supreme Court views as proper form and procedure to satisfy constitutional due process. Bailey cannot complain of any lack of fairness arising from deviations from the strict procedure. The complaint is that the wrong officialthe court administrator and not the chancery clerk arranged for the postponement and sent the notice. In addition, the option of an order entered on the record on the day of the initially-scheduled hearing was not employed. Neither shortcoming affected Bailey's notice and therefore his ability to prepare.
¶ 14. Bailey stresses language in this Court's inventory of Rule 81 precedents that he interprets to make "strict compliance" an end to itself. For example, we once stated that even if a party attends the hearing in question, this does not waive the issue that the Rule 81 summons was defective. Floyd v. Floyd, 870 So.2d 677, 679 (Miss.Ct.App.2004), interpreting Serton v. Serton, 819 So.2d 15, 21 (Miss.Ct. App.2002). This was dicta, since in Floyd, the respondent did not appear at either hearing at which dispositive determinations were made on his default under the divorce decree. Floyd, 870 So.2d at 679. More importantly, on further review, we find that the multiple hearings and notices discussed in Serton were fused into an inaccurate summary by the Floyd court. It is true that Mr. Serton did appear at some hearings. Judge Irving in Serton makes clear, though, when discussing the September 7, 1999 hearing at which the contempt order was entered, that there was no evidence that Mr. Serton was present. Serton, 819 So.2d at 17, 20-21. That was not a hearing continued from an earlier date but was the initially-scheduled hearing for determining whether the former husband was in contempt for failing to comply with court orders entered in 1998. Id. at 17. The failure to issue a proper Rule 81 summons for that September 1999 hearing prevented the chancellor from acquiring jurisdiction to consider contempt. Id. at 20.
¶ 15. Serton did not hold that it is irrelevant that the responding party appeared and participated at the hearing for which a possibly defective Rule 81 summons was issued. In another precedent, the Supreme Court rejected a party's contention that failure to follow "the strict requirements of Rule 81" could never be waived, holding instead that the appearance of a party's attorney at the scheduled hearing waived defects in the service of a Rule 81(d)(5) summons. Isom v. Jernigan, 840 So.2d 104, 106-07 (Miss.2003). We overrule the language in Floyd that interpreted Serton to mean that a party's appearance at the hearing does not constitute a waiver at least of some defects in the notice. We further withdraw the conclusion in Floyd that "Rule 81 requires strict compliance." Floyd, 870 So.2d at 680.[1] Instead, all civil procedural rules are *409 to be applied so as to "secure the just, speedy, and inexpensive determination of every action." M.R.C.P. 1.
¶ 16. We hold that since Bailey received a proper Rule 81 summons for the initial hearing, since the postponements of that hearing were at the initiation and agreement of his own counsel, and since Bailey appeared at the hearing at which he was found in contempt despite his unimpaired opportunity for an aggressive defense, any defects in the issuance of the notice by the court administrator were waived. In so concluding, we rely on the fact that no additional Rule 81 summons is required where by order entered on the day of the hearing scheduled under Rule 81, the action may be continued to a later date certain. M.R.C.P. 81(d)(5); Vincent, 872 So.2d at 678. Neither the rule itself nor any elaboration by the rule's authors at the Supreme Court makes a Rule 81 summons the indispensable document for rescheduled hearings. What Bailey did not get here was the right official's signature or the right office's stationery mailing the notice. Nothing substantive was lost.
ISSUE 2: Attachment of Social Security Benefits
¶ 17. Mr. Bailey receives Social Security benefits for disability (SSDI) and for supplemental income (SSI). In an agreed judgment of November 10, 2003, which was reduced to a final judgment on December 9, 2003, Bailey agreed to pay the award of back Social Security benefits into the registry of the chancery court upon receipt. On November 12, 2003, Bailey was notified by federal officials that he was awarded back benefits dating from January 10, 2001. Bailey deposited $12,403.78 of SSDI benefits into the registry of court but did not so deposit SSI back benefits of $6,823.82. The judgment entered on June 28, 2004, required Bailey to make restitution for not depositing the SSI back payment into the registry of the court.
¶ 18. Bailey argues that there is an anti-attachment provision that protects SSI benefits and which preempts Mississippi law. Bailey gives very little authority for this argument, citing only a United States Supreme Court case. Washington State Dep't. of Soc. and Health Servs. v. Keffeler, 537 U.S. 371, 379, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003) (interpreting 42 U.S.C. § 407(a)). The ruling court is certainly authoritative, but Keffeler dealt with the issue of whether the State of Washington could receive payment as a representative payee for children in foster care who were entitled to these benefits. Id. at 377-78, 123 S.Ct. 1017. We do not find that issue relevant to the present discussion.
¶ 19. The SSI benefits that are at the center of the dispute are authorized by federal statute. 42 U.S.C. § 1381 (2006). These benefits are affected by an anti-attachment or exemption provision. 42 U.S.C. § 1383(d)(1) (2006) (applying the anti-attachment provision found in 42 U.S.C. § 407(a) to SSI benefits under 42 U.S.C. § 1381). Another statute, though, displaces Section 407 when child support is at issue: "moneys . . . due from, or payable by, the United States . . . to any individual . . . shall be subject to . . . legal process brought for the enforcement, against such individual of his legal obligations to provide child support. . . ." 42 U.S.C. § 659(a) (1988). However, the arguments *410 about these statutes are an exercise in misdirection.
¶ 20. The parties entered into an agreement that Bailey would satisfy child support arrearage by depositing upon receipt his back payment of SSDI and SSI into the registry of the court. The chancellor's order of December 9, 2003, requiring Bailey to deposit these funds, grew out of the parties' agreement. Bailey alleges that his agreement to make the payments was involuntary because he feared he would be incarcerated unless he found a means to make the payments. The chancellor found that there was no duress, that the issue was not originally appealed, and consequently the agreement became final. We find substantial evidence to support those factual determinations.
¶ 21. Even if Bailey could not have been forced to use these benefits to satisfy his obligations to his child for support, he could agree to do so and have that agreement enforced. The chancellor did not commit error by enforcing the agreement of the parties.
¶ 22. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] The Floyd opinion also summarizes another precedent as requiring strict compliance with Rule 81: "this rule must be strictly complied with in order for the judgment to be valid. Reichert, 807 So.2d at 1289." Floyd, 870 So.2d at 680. An examination of that page of Reichert finds no explicit reference to "strict compliance," and instead the court relies for reversal on the fact that the party improperly summonsed under Rule 81 "did not voluntarily appear. . . ." Reichert, 807 So.2d at 1289.