42 So.3d 10 (2010)
Kenny BARNES a/k/a Kenneth Barnes
v.
DEPARTMENT OF HUMAN SERVICES, State of Mississippi.
No. 2009-CA-00438-SCT.
Supreme Court of Mississippi.
June 3, 2010.
Rehearing Denied September 2, 2010.
*11 Patricia Peterson Smith, attorney for appellant.
Russell William Holmes, attorney for appellee.
EN BANC.
DICKINSON, Justice, for the Court.
¶ 1. This case requires that we address three competing interests: the supremacy of federal law over state law; the compelling public interest in child support;[1] and *12 the compelling public interest in the protection of the mentally disabled.
¶ 2. Kenny Barnes fathered a child out of wedlock. According to a determination made pursuant to Social Security guidelines, Barnes was mentally incompetent. After a paternity test established him as the father, the trial court ordered Barnes to pay child support in the amount of fourteen percent of his income, which consisted entirely of Supplemental Security Income ("SSI") payments, and entered an order of withholding. The questions presented are whether a federal law which prohibits garnishment or attachment of SSI payments: (1) prohibits inclusion of SSI benefits in income used to calculate child support, and (2) prohibits an order of withholding on SSI benefits to satisfy a child-support order.

BACKGROUND FACTS AND PROCEEDINGS
¶ 3. On February 18, 2009, the Chancery Court of Franklin County entered a paternity order adjudicating Kenny Barnes the father of Cindy London's minor child, L.L. Because London had received services under Title IV of the Social Security Act, the Mississippi Department of Human Services ("DHS") filed suit on London's behalf, seeking child support from Barnes.
¶ 4. Barnes's only source of income was Supplemental Security Income ("SSI"), a benefit he had received since infancy because of a physical disability. Barnes is illiterate. Although he possesses a driver's license, he does not drive. He testified that he is "slow" and has been determined to be incompetent under the Social Security guidelines for purposes of handling his own financial affairs. He could not remember the name of the child he fathered.
¶ 5. When asked at trial to stand up and show the court how much money he had on his person, Barnes had only one quarter in his pocket. His SSI checks are made payable to his sister, Hazel Henderson,[2] whom the Social Security Administration designated as his "care-giver."[3] Barnes replied "Uh-uh" when asked whether he had ever worked anywhere or was capable of working. When asked where his SSI money went he replied "Bills, I guess. Bills.... Like, light bill."
¶ 6. Upon determining Barnes's monthly income to be $637which was derived entirely from SSI benefitsthe trial court ordered him to pay child support in the amount of $89 per month, which the court found "compatible with the child support guidelines as set out in Section 43-19-101 of the Mississippi Code Annotated." The chancellor ordered child support to be paid at the statutory guideline rate of fourteen percent. The chancellor also ordered Barnes to pay an additional amount toward arrearages, court costs and fees, as well as the cost of genetic testing. To collect these amounts, the court entered an order for withholding the amounts due *13 from Barnes's SSI benefits. Barnes now appeals from this order.

ANALYSIS
¶ 7. Barnes argues that the Social Security Act precludes use of SSI payments in calculating child support and that federal law protects his SSI benefits from garnishment or other legal process. In analyzing Barnes's assignments of error, our standard of review is clear: We will not disturb a chancellor's factual findings unless they are clearly erroneous or manifestly wrong, but we must reverse a chancellor's application of an erroneous legal standard. Johnson v. Johnson, 650 So.2d 1281, 1285 (Miss.1994).

I.
¶ 8. We first shall review various federal statutes and interpretive caselaw applicable to the issues presented in this case.

The Social Security Act
¶ 9. As a part of the Social Security Act (the "Act"), the United States Congress established SSI for the aged, blind, and disabled to "assure a minimum level of income for people who are age 65 or over, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level." 20 C.F.R. § 416.110 (2009). To receive SSI benefits, Barnes was required to establish that he was disabledas defined by the Actand that his income and resources were below the permitted limit. 20 C.F.R. § 416.202 (2009). The Act defines disability as
the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. To meet this definition, [one] must have a severe impairment[] that makes [him] unable to do [his] past relevant work ... or any other substantial gainful work that exists in the national economy.
20 C.F.R. § 416.905 (2009).
¶ 10. SSI benefits are, in some cases, paid directly to the beneficiary. However, where the Social Security Administration has determined that the beneficiary is mentally incompetent, the benefits are paid to a "representative payee." 20 C.F.R. § 416.610 (2009). Once SSI benefits are awarded, "[n]o restrictions, implied or otherwise, are placed on how recipients spend the Federal payments." 20 C.F.R. 416.110 (2009).
¶ 11. Barnes argues that the Social Security Act prohibits the transfer, assignment, garnishment, or attachment of his SSI payments to anyone other than himself. He relies on the portion of the Act commonly referenced as its "Anti-Attachment Clause," which reads as follows:
(a) The right of any person to any future payment under this subchapter[4] shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
42 U.S.C. § 407 (2006) (emphasis added).

United States Supreme Court Precedent
¶ 12. In reaching our decision today, we are assisted by three United States Supreme *14 Court decisions involving attempts by States to attach Social Security benefits. In Bennett v. Arkansas,[5] addressing the State of Arkansas's attempt to attach the Social Security benefits of some of its prisoners as reimbursement for the cost of their imprisonment, the Court held that "Section 407(a) unambiguously rules out any attempt to attach Social Security benefits." Id. at 397. The Court rejected the state's argument that the statute included an "implied exception" which allowed it to attach benefits in cases in which a state has provided a recipient with "care and maintenance." Id.
¶ 13. In Philpott v. Essex County Welfare Board,[6] the state of New Jersey attempted to attach retroactive Social Security payments, which were paid to a citizen who had been the recipient of state welfare benefits. The state's claim was based on the citizen's written agreement to reimburse the county welfare board for all payments received. In rejecting the argument, the Court stated that Section 407 "imposes a broad bar against the use of any legal process to reach all social security benefits. That is broad enough to include all claimants, including a State." The Court also stated, "We see no reason why a State, performing its statutory duty to take care of the needy, should be in a preferred position as compared with any other creditor." Id. at 416-417, 93 S.Ct. 590.
¶ 14. Finally, in Keffeler,[7] a group of foster children who were Social Security beneficiaries brought a class-action suit against the State of Washington, alleging that the State had violated federal law when it reimbursed itself for foster-care expenditures from the children's benefits. The children's benefits actually were paid to the State of Washington as "representative payee," and the Court held:
Although it is true that the State could not directly compel the beneficiary or any other representative payee to pay Social Security benefits over to the State, that fact does not render the appointment of a self-reimbursing representative payee at odds with the Commissioner's mandate to find that a beneficiary's `interest ... would be served' by the appointment .... a representative payee serves the beneficiary's interest by seeing that basic needs are met.
Id. at 389-90, 123 S.Ct. 1017 (quoting 42 U.S.C. §§ 405(j)(1)(A), 1383(a)(2)(A)(ii)(I) (2006)). Stated another way, the Court held that the Department of Social and Health Services's reimbursement did not violate Section 407 of the Social Security Act where the Stateas "representative payee" for the childrenused the funds to care for the basic needs of the beneficiaries and employed no legal process that was barred by Section 407 to reimburse itself.

Federal Child Support Enforcement Act
¶ 15. DHS points out that Congress enacted the Federal Child Support Enforcement Act, 42 U.S.C. Section 659, to facilitate collection of child support from parents who receive Social Security Benefits. That act, however, reads in relevant part:
Notwithstanding any other provision of law (including section 407 of [the Social Security Act]) ... moneys (the entitlement to which is based upon remuneration *15 for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual ... shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, ... to any other legal process brought, by a State agency administering a program ... to enforce the legal obligation of the individual to provide child support or alimony.
42 U.S.C. § 659(a) (2006)(emphasis added). This provision allows a state or litigant to attach (for alimony or child support) Social Security payments calculated and paid based on amounts withheld from wages and paid into the Social Security system. However, as explained by the Supreme Court of Nevada in addressing a similar issue in that state:
SSI is intended to supplement a recipient's income, not substitute lost income because of a disability. The recipient is not required to pay into the social security system in order to qualify for SSI benefits. Thus, SSI provides a person with a minimum income and is designed to help poor, needy people.
Metz v. Metz, 120 Nev. 786, 790, 101 P.3d 779 (Nev.2004). Because the entitlement to SSI benefits is not based on "remuneration for employment," Section 659(a) is inapplicable to them and, therefore, not applicable in the present case.
¶ 16. Section 407 is clear: SSI payments are not "subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." 42 U.S.C. § 407 (2006).

II.
¶ 17. In Mississippi, the parent of a child born out of wedlock is held to the same financial responsibilities for supporting the child as parents who are married. Miss.Code Ann. § 93-9-7 (Rev.2004). The Legislature passed guidelines to assist chancery courts in determining the amount of child support to award in an individual case. See Miss.Code Ann. § 43-19-101 (Rev.2009). The guidelines' suggested percentages are based on the noncustodial parent's adjusted gross income and the number of children to be supported. Id. The statute's definition of gross income includes "disability ... benefits" and "any other payments made by ... federal or state government." Id.
¶ 18. Thus, because SSI payments are "payments made by ... federal ... government," Section 93-9-7 includes SSI payments in the amount available for child support. The question thus is whether Section 93-9-7 or federal law prevails. This issue is one of first impression for this Court. However, the Mississippi Court of Appeals has twice addressed a similar issue. In Lee v. Lee, 859 So.2d 408 (Miss.Ct.App.2003), the court held that a chancellor did not abuse his discretion when ordering child-support payments from a man whose only source of income was SSI benefits. The Court of Appeals pointed out that the chancellor
did not believe [the man] was as destitute as he claimed or that [he] was as incapacitated as he claimed.... The chancellor determined that [he] was capable of finding a way to raise money in order to support [his daughter], even if it was not a great sum.
Id. at 410. The Court of Appeals found some comfort in the chancellor's finding that the father could, "if nothing else, [pick] up Coke cans and [turn] them in for a refund." Thus, while we would have preferred more developed evidence as to income-earning capacity, Lee is distinguishable *16 from the case before us today, as it was grounded in the chancellor's belief that the father could earn income separate from his SSI benefits.
¶ 19. Three years following Lee, the Court of Appeals decided Bailey v. Fischer, 946 So.2d 404 (Miss.Ct.App.2006), in which it held thatwhere SSI recipients agree to pay child support out of their SSI paymentscourts may enforce such agreements. Id. at 410. In Bailey, an agreed judgment was entered into the court record, in which the father agreed to use his SSI benefits to pay back child support. Id. at 409. When the father refused to fulfill his obligations under that agreement, the chancellor enforced the agreement by ordering the father to deposit his SSI payments into the registry of the court. Id. at 410. The Court of Appeals held the chancellor did not commit error in doing so. Id.
¶ 20. There was no finding in the record before us that Barnes could do any work that would produce income, as the trial court found in Lee. Furthermore, Lee had received approximately $7,000 in back pay prior to the trial, and he gave only $100 of that to the support of his daughter. There is no evidence in the record that Barnes ever received any income other than his SSI benefits.
¶ 21. DHS argues that Barnes agreed to pay child support using his SSI payments, as did the father in Bailey. The alleged agreement took place during the hearing when Barnes testified that his sister had provided him approximately $100 of his SSI payment each month for his personal use.[8] When asked what he did with this money, Barnes did not respond. When asked, "Wouldn't you say that's $100 you could put on your child support?" he responded, "Yeah, I can say that." We hold that Barnes's statement did not constitute an agreement, and thus we have no need to further address the Court of Appeals' decision in Bailey. We again note that Barnes has been declared incompetent to handle his own financial affairs.

III.
¶ 22. The Supremacy Clause of the United States Constitution provides that federal law is the "supreme Law of the Land." Specifically, it provides:
This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
U.S. Const. art. VI, cl. 2.
¶ 23. The U.S. Supreme Court has recognized the power of the Supremacy Clause, even in family law matters traditionally left to the States. In Rose v. Rose, 481 U.S. 619, 625, 107 S.Ct. 2029, 95 L.Ed.2d 599 (1987), the Court considered the question of whether a state court could hold a disabled veteran in contempt for failing to pay child support, where the veteran's only means of satisfying this obligation was compensation he received for his service-related injuries. Id. at 621-22, 107 S.Ct. 2029. The Court stated:
The whole subject of domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States. On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination *17 whether Congress has positively required by direct enactment that state law be pre-empted. Before a state law governing domestic relations will be overridden, it must do major damage to clear and substantial federal interests.
Id. at 624, 107 S.Ct. 2029 (citations omitted).
¶ 24. The veteran in Rose based his arguments on 38 U.S.C. Section 3101(a), which provides that "payments of benefits... under any law administered by the Veteran's Administration ... made to, or on account of, a beneficiary ... shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." Id. at 631, 107 S.Ct. 2029. The Court examined the legislative history behind this provision, and concluded that "Veteran's disability benefits ... are intended to provide reasonable and adequate compensation for disabled veterans and their families." Id. at 630, 107 S.Ct. 2029 (citation to legislative history omitted). On this basis, the Court stated "enforce[ment] of a valid child support order coincide[s] with Congress' intent to provide veterans' disability compensation for the benefit of both appellant and his dependents." Id. at 632, 107 S.Ct. 2029.
¶ 25. Our analysis must therefore hinge on whether enforcement of a child-support order would impede Congress' purpose in delivering SSI benefits. As already stated, SSI benefits are to "assure a minimum level of income for people who are age 65 or over, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level." 20 C.F.R. § 416.110 (2009).
¶ 26. We agree with the Minnesota Court of Appeals' reasoning when it considered the application of Rose to SSI benefits. The court noted that "veteran's benefits are more similar to subchapter II benefits [based on remuneration for employment] than SSI benefits. Both subchapter II benefits and veteran's benefits are received for time on the job. SSI benefits, by contrast, are awarded solely on the basis of need." Becker County Human Servs. v. Peppel, 493 N.W.2d 573, 575 (Minn.Ct.App.1992). The court also noted that veterans' benefits are intended to compensate the veteran and his family, while SSI benefits are awarded to protect only the recipient. Id.
¶ 27. Thus, we must conclude that, pursuant to the Supremacy Clause, federal law preempts Mississippi Code Section 43-19-101, and SSI benefits are not subject to attachment, garnishment or other legal process to satisfy a child-support order. That being said, the federal statutes do not specifically prohibit a chancellor from using SSI benefits to calculate child support. Therefore, we affirm the chancellor as to the award of child support. However, we also wish to make it clear that chancellors are not required to consider SSI benefits in determining whether and in what amount to award child support. Stated another way, we do not hold that chancellors may neveror must alwaysconsider SSI benefits to calculate child support. Rather, we hold that chancellors must utilize discretion based on the facts of a particular case.

CONCLUSION
¶ 28. We hold the chancellor did not err by using Barnes's SSI benefits to calculate child support. However, we also hold that, pursuant to 42 U.S.C. Section 407(a), SSI payments are not subject to withholding orders to satisfy child-support obligations. We further hold that 42 U.S.C. Section 659(a) has no relevance to the present case. For the foregoing reasons, the judgment *18 of the trial court is affirmed in part and reversed and rendered in part.
¶ 29. AFFIRMED IN PART; REVERSED AND RENDERED IN PART.
CARLSON, P.J., LAMAR, KITCHENS AND CHANDLER, JJ., CONCUR. GRAVES, P.J., CONCURS IN RESULT ONLY. WALLER, C.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY CARLSON AND GRAVES, P.JJ., DICKINSON, LAMAR, KITCHENS AND PIERCE, JJ. RANDOLPH, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
WALLER, Chief Justice, concurring in part and in result:
¶ 30. I concur in the majority's conclusion that, under 42 U.S.C.A. Section 407(a), SSI benefits may not be garnished or withheld to satisfy child-support obligations. However, I believe that SSI benefits should be considered as income for purposes of calculating child support, and that chancellors may order child support even when the parent's sole source of income is SSI benefits.
¶ 31. Nowhere in Section 407(a) does it expressly require courts to disregard SSI payments from consideration or calculation of the parent's income. The statute simply prohibits garnishment or attachment of those funds to satisfy a child-support award, even after it is paid to the recipient.[9] 42 U.S.C.A. § 407(a) (2000). Furthermore, Mississippi Code Section 43-19-101(3)(a) provides that a parent's gross income "shall be calculated by ... determin[ing] all potential sources that may reasonably be expected to be available to the absent parent including ... disability [and] any other payments made by any ... federal or state government." Miss.Code Ann. § 43-19-101(3)(a) (Rev.2009). Thus, nothing prohibits a chancellor from using SSI benefits as income for purposes of calculating child-support obligations. In fact, SSI "shall" be considered, under Section 43-19-101. Miss.Code Ann. § 43-19-101(3)(a) (Rev.2009).
¶ 32. Similarly, nothing prohibits a chancellor from ordering child support, even if the paying parent's sole source of income is SSI benefits. In determining child support, chancellors may consider, inter alia, the health, income, and earning capacity of both parents, the reasonable needs of the child, and the necessary living expenses of the noncustodial parent. Brabham v. Brabham, 226 Miss. 165, 84 So.2d 147, 153 (1955). See also, Deborah H. Bell, Bell on Mississippi Family Law 286 (1st ed. 2005). Additionally, the Legislature has provided chancellors with statutory guidelines to aid in their calculation of child-support awards. See Miss.Code Ann. § 43-19-101 (Rev.2009). The guidelines "allow the needs of a child and the financial ability of a parent to be blended." Hults v. Hults, 11 So.3d 1273, 1279 (Miss. Ct.App.2009) (quoting Kilgore v. Fuller, 741 So.2d 351, 354 (Miss.Ct.App.1999)) (emphasis added). Thus, the chancellor can choose to take into account the "total available assets of the obligee, obligor, and the child" and "[a]ny other adjustment which is needed to achieve an equitable result...." Miss.Code Ann. § 43-19-103(h) & (i) (Rev.2008). I am confident that our chancellors are capable of reasonably and equitably applying all the appropriate standards for determining child support.
*19 ¶ 33. Here, the chancellor ordered Barnes to pay $89 per month as child support (fourteen percent (14%) of his SSI income of $637 per month). See Miss. Code Ann. § 43-19-101(1) (Rev.2008). If the chancellor had foundbased on Barnes's health, income, earning capacity, necessary living expenses, and available assets, Brabham, 84 So.2d at 153, Miss. Code Ann. § 43-19-103(h) & (i)that Barnes was unable to contribute $89 of his SSI benefits per month to help support his child, or that the amount was otherwise unjust or inappropriate, the chancellor could have ordered less child support or no child support at all. Thus, while I agree that SSI is not subject to withholding, levy, execution, garnishment, or attachment, I cannot say that the chancellor erred in ordering Barnes to pay child support, even though Barnes's sole source of income is SSI.[10]
CARLSON AND GRAVES, P.JJ., DICKINSON, LAMAR, KITCHENS AND PIERCE, JJ., JOIN THIS OPINION.
RANDOLPH, Justice, dissenting:
¶ 34. The Majority asserts that this case presents "competing interests," including "the supremacy of federal law over state law" and "the compelling public interest in child support." (Maj. Op. at ¶ 1). The Majority also discusses "the compelling public interest in the protection of the mentally disabled." (Maj. Op. at ¶ 1). SSI benefits are payable to those over 65, the blind, and the disabled. See 20 C.F.R. § 416.110 (2009). However, facts taken from the record do not establish that Barnes is "mentally disabled" and "mentally infirm." (Maj. Op. at ¶ 1) (emphasis added). The chancellor commented that "[t]here's been no evidence offered to the court of a showing of any adjudication of incompetency by a court of competent jurisdiction[,]"[11] and added that Barnes's obligation arose "out of the procreation of a child without regard to whether he had contractual capacity."[12] Accordingly, I cannot agree that the case sub judice requires consideration of "the compelling public interest in the protection of the mentally disabled." (Maj. Op. at ¶ 1).
¶ 35. Furthermore, the Majority's analysis fails to affirm the chancellor who recognized the chancery court's constitutional obligation to protect minors. Under the Tenth Amendment to the United States Constitution, "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." U.S. Const. amend. X. The law of domestic relations has long been recognized by the United States Supreme Court as "belong[ing] to the laws of the States and not to the laws of the United States." Rose v. Rose, 481 U.S. 619, 625, 107 S.Ct. 2029, 2033-34, 95 L.Ed.2d 599 (1987) (quoting In re Burrus, 136 U.S. 586, 593-94, 10 S.Ct. 850, 852-53, 34 L.Ed. 500 (1890)).
*20 ¶ 36. The Mississippi Constitution established that our chancery courts are exponents of defenseless and helpless children. See Miss. Const. art. 6, § 159(d) ("[t]he chancery court shall have full jurisdiction in the following matters and cases, viz.: ... (d) Minor's business...."). This Court has stated that:
[l]ong ago it became the established rule for the court of chancery to act as the superior guardian for all persons under such disability. This inherent and traditional power and protective duty is made complete and irrefragable by the provisions of our present state constitution. It is not competent for the Legislature[[13]] to abate the said powers and duties or for the said court to omit or neglect them. It is the inescapable duty of the said court and of the chancellor to act with constant care and solicitude towards the preservation and protection of the rights of infants and persons non compos mentis. The court will ... rescue them from faithless guardians, ... and even from unnatural parents, and in general will and must take all necessary steps to conserve and protect the best interest of these wards of the court. The court will not and cannot permit the rights of an infant to be prejudiced by any waiver, or omission or neglect or design of a guardian, or of any other person, so far as within the power of the court to prevent or correct.
Union Chevrolet Co. v. Arrington, 162 Miss. 816, 138 So. 593, 595 (1932) (emphasis added). To further this purpose, our Legislature has enacted laws to protect minors through the provision of child support. See Miss.Code Ann. §§ 43-19-31 to 43-19-103 (Rev.2009).
¶ 37. As regards the Supremacy Clause, the United States Supreme Court rightfully has declared:
"[o]n the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has `positively required by direct enactment' that state law be pre-empted." [Hisquierdo v. Hisquierdo, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979),] quoting Wetmore v. Markoe, 196 U.S. 68, 77, 25 S.Ct. 172, 175, 49 L.Ed. 390 (1904). Before a state law governing domestic relations will be overridden, it "must do `major damage' to `clear and substantial' federal interests." Hisquierdo, supra, 439 U.S. at 581, 99 S.Ct. at 808, quoting United States v. Yazell, 382 U.S. 341, 352, 86 S.Ct. 500, 506, 15 L.Ed.2d 404 (1966).
Rose, 481 U.S. at 625, 107 S.Ct. 2029 (emphasis added). Under the facts presented, I cannot conclude that a withholding order directed to Barnes, requiring that he pay child support from his SSI benefits, does "`major damage' to `clear and substantial' federal interests," after the SSI benefits are paid to the recipient. Id. (emphasis added). I find no legitimate reason that "[o]ur analysis must ... hinge on whether enforcement of a child-support order would impede Congress' purpose in delivering SSI benefits[,]" and no support in the record that the judgment of the chancellor has impeded Congress' purpose. (Maj. Op. at ¶ 25) (emphasis added). The issue should be limited to whether enforcement of said order would "do `major damage' to `clear and substantial' federal interests." Rose, 481 U.S. at 624, 107 S.Ct. 2029.
¶ 38. The Majority acknowledges that Congress has expressed a strong federal interest in "facilitat[ing] collection of child support from parents who receive Social *21 Security [b]enefits[,]" via the Federal Child Support Enforcement Act. See Maj. Op. at ¶ 15 (citing 42 U.S.C. § 659). While SSI benefits are not a form of "remuneration for employment," such that Section 659 is inapplicable, that does not minimize the expressed federal interest in the provision of child support. Moreover, as noted by the United States Supreme Court in Rose, family law is controlled by state law, except in "rare" instances. See Rose, 481 U.S. at 625, 107 S.Ct. 2029. The Mississippi Court of Appeals twice has affirmed orders of child support from individuals whose sole source of income was SSI benefits. See Bailey v. Fischer, 946 So.2d 404 (Miss.Ct.App.2006); Lee v. Lee, 859 So.2d 408 (Miss.Ct.App.2003).
¶ 39. Fundamentally, the purpose of an exemption statute like the "Anti-Attachment Clause":
is to protect the recipient and his family from the claims of creditors. Since family members fall into the protected category, there is no reason to allow the recipient to escape liability to his family.... [Additionally], alimony and child support are not a debt in the same sense as a debt owed to a creditor. As one court expressed it, they are "a duty of a higher obligation."
Ex parte Griggs, 435 So.2d 103, 104 (Ala. Civ.App.1983) (quoting Schlaefer v. Schlaefer, 112 F.2d 177, 186 (D.C.Cir.1940)).
¶ 40. In Schlaefer, Anna Katherine Schlaefer ("Anna") sought unpaid alimony from her ex-husband, Wallace Clayton Schlaefer ("Wallace"). Schlaefer, 112 F.2d at 179. Anna alleged that:
[i]n addition to other income, ... [Wallace] receives $100 per month from appellee insurance company as disability benefit payments under two policies of insurance. She asked for sequestration of his property, its conversion into cash and application of the proceeds to pay arrears and future monthly installments of $60 in alimony.
Id. Wallace acknowledged receipt of the disability benefit payments, but contended that they were "exempted specifically from process under Section 16a of the Life Insurance Act for the District of Columbia, Act of Congress of June 19, 1934...."[14]Id. The district court agreed with Wallace and dismissed Anna's petition. See Schlaefer, 112 F.2d at 180. The D.C. Circuit reversed and remanded. See id. at 187. According to that court, in an opinion authored by future United States Supreme Court Justice Wiley Blount Rutledge:
[t]he basic issue boils down to whether Congress intended to relieve the disabled insured to the extent of his disability payments from legally enforceable obligation to support his family and those legally dependent upon him. So far as general creditors are concerned the purpose is clear, with the exceptions stated, to make the disposition of these funds a matter solely for his judgment. Congress regarded it as better for the creditors to go unpaid than to deprive the debtor and his dependents of this *22 means of support when earning capacity would be cut off. Hence it used broad language prohibiting recourse to the fund by legal process. By removing it absolutely from the reach of such claims, to this extent it protected the insured from want during disability....
Id. at 185. However:

[b]y law and the most sacred contract [Wallace] is obligated to employ [disability benefit payments], while it exists, for dependents' support. Disability does not relieve him of that obligation, though it may affect the extent to which he can perform it. The obligation which he assumes upon marriage operates "in sickness and in health." Though he may not be able to work, if he has other means he is required to apply them equitably in the discharge of this duty. For the head of a family, the essentials of sustenance for his dependents remain "necessaries" as much when he is disabled as when he is well and employed. His disability does not terminate the wife's power to pledge his credit for them, whether for her own or for his children's support. Claims so created prior to any award of alimony or support money appear to fall squarely within the letter and the purpose of the statutory exemption.[[15]]
Id. (emphasis added). See also Stirgus v. Stirgus, 172 Miss. 337, 160 So. 285, 286 (1935) ("[t]he obligation of a husband to support his wife is not a debt in the sense of this statute, but is an obligation growing out of the marriage status and public policy...."); Walker v. Walker, 204 N.C. 210, 167 S.E. 818, 819 (1933) ("the amount allowed for the support and maintenance of the infant ... is not an ordinary debt in the sense of a financial obligation against which the plaintiff may claim his homestead and personal property exemptions"); Littleton et al. v. Littleton, 224 Ala. 103, 139 So. 335, 336 (1932) ("[t]he decree for alimony ... was not a `debt contracted' within the meaning of our Constitution and statutes ..., and the defendant's claim of exemption as to the garnished sum was properly disallowed"); Caldwell v. Central of Ga. Ry. Co., 158 Ga. 392, 123 S.E. 708, 709 (1924) (quoting Bates v. Bates, 74 Ga. 105 (1884)) ("`[a] decree for alimony stands upon a different basis from an ordinary debt.' ... All laws exempting any portion of one's earnings from the process of garnishment are primarily based upon the necessity of exempting in behalf of a debtor, even against his just debts, something with which to care for his family or dependents as well as himself. This is the only principle upon which a debtor should be permitted to withhold money within the power of the court from a creditor, the justness of whose claim is undisputed.") (emphasis added). Based upon the aforementioned "duty of higher obligation[,]" as well as the fact that applying the exemption like the lower court "can operate only in favor of a head of a family who appropriates to his exclusive sustenance or pleasure income received in times of adversity[,]" the court concluded that "[w]e cannot believe that Congress intended to create an exemption so broad and so inconsistent with the policy which it has declared in other acts." Schlaefer, 112 F.2d at 185-86.
¶ 41. A "higher-obligation" analysis is particularly persuasive. Has the United States Congress truly exempted parents *23 from honoring their primal obligation of nurture and protection of their offspring?[16] Certainly among "the Laws of Nature and of Nature's God"[17] is an obligation of a parent to support his minor child. Barnes's status as an SSI benefit recipient "does not relieve him of that obligation" and, in my estimation, he is required to apply such benefits "equitably in the discharge of this duty." Schlaefer, 112 F.2d at 185.
¶ 42. Under the specific factual scenario presented (in which Barnes acknowledged that $100 of what he received monthly could be put toward child support), I cannot join opinions that subjugate not only the needs of an impoverished,[18] helpless two-year-old, but also the constitutional mandate to our chancery courts to exercise full jurisdiction over the business of minors under Article 6, Section 159(d) of the Mississippi Constitution.
¶ 43. Taking into account "the nature of the fund exempted, the purposes for which it ordinarily is created, the circumstances in which it becomes available ... and the uses normally made of it in those conditions[,]" Schlaefer, 112 F.2d at 185, I find the chancellor's judgment to be eminently sound and based on established legal principles. Given the federal statutory expressions of interest in the provision of child support, along with the clear pronouncement of the United States Supreme Court in Rose, I fail to discern how enforcing an order requiring Barnes to honor an obligation to support his child does "`major damage'" to any identifiable "`clear and substantial federal interests.'" Rose, 481 U.S. at 625, 107 S.Ct. 2029. Rose recognized that state courts (learned in law and equity) are better suited to require an irresponsible parent to share a loaf of bread with his children than Congress. To rule otherwise would allow a parent to purchase cigarettes and beer, while at the same time depriving his or her child of formula or baby food. Therefore, I respectfully dissent.
NOTES
[1] We note and laud the dissent's recognition of our constitution's concern for minors (or as the dissent puts it, "defenseless and helpless children"). However, for the sake of completeness, we point out that our chancery courts, this Court, and the federal government must be equally concerned for others in our society who are defenseless and helpless, such as the mentally infirm. See Miss. Const. art. 6, § 159(d) ("[t]he chancery court shall have full jurisdiction in the following matters and cases, viz.: ... (e) ... persons of unsound mind"). The SSI benefits at issue in this case are paid by the federal government only to persons who are "blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level." 20 C.F.R. § 416.110 (2009).
[2] Because Henderson was the payee on Barnes's SSI checks, Barnes's counsel moved to make her a necessary party to the action. The trial court denied the motion.
[3] Barnes's former Social Security care-giver was his wife, Sandra Barnes, who testified that she married him because she "believed [she] was able to change him and teach him how to read and how to do these things and et [cetera]." At the time of the hearing, Barnes and Sandra remained married, but had been separated for nine years.
[4] Section 407 is found in Title 42Public Health and Welfare, Chapter 7-Social Security, Subchapter IIFederal Old-Age, Survivors, and Disability Insurance Benefits. Barnes receives Social Security benefits under Subchapter XVISupplemental Security Income for Aged, Blind, and Disabled. Section 1383(d)(1) incorporates this provision by reference and applies it to Subchapter XVI of the Act. 42 U.S.C. § 1383(d)(1) (2006).
[5] 485 U.S. 395, 108 S.Ct. 1204, 99 L.Ed.2d 455 (1988).
[6] 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973).
[7] 537 U.S. 371, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2002).
[8] Barnes initially said he received "A few dollars."
[9] Section 407(a) states that "none of the monies paid or payable ... under this subchapter shall be subject to execution, levy, attachment, [or] garnishment...." 42 U.S.C. § 407 (2000) (emphasis added).
[10] Because the question is not before us, however, we do not address what judicial mechanisms are potentially available to the chancellor, such as her contempt powers, to enforce such a child-support award.
[11] At the hearing, Barnes testified to being previously employed, to possessing a Mississippi driver's license, and to previously owning a car. Additionally, Barnes's wife testified, pursuant to questioning from the chancellor, that Barnes was sufficiently competent to enter into a marriage ceremony. Moreover, Barnes merely referred to himself as "[s]pecial [e]d."
[12] I note that the child at issue in this proceeding is from Fayette County, but Barnes has also fathered an illegitimate child in Claiborne County.
[13] This is no less true for the United States Congress.
[14] Section 16a provided, in pertinent part, that:

Exemption of disability insurance from execution.No money or other benefit paid, provided, allowed, or agreed to be paid by any company on account of the disability from injury or sickness of any insured person shall be liable to execution, attachment, garnishment, or other process, or to be seized, taken, appropriated or applied by any legal or equitable process or operation of law, to pay any debt or liability of such insured person whether such debt or liability was incurred before or after the commencement of such disability....
Life Insurance Act for the District of Columbia, Act of Congress of June 19, 1934, c. 672, 48 Stat. 1175, D.C.Code (Supp. IV 1938) (emphasis added).
[15] The court added that:

the usual purpose of exemptions is to relieve the person exempted from the pressure of claims hostile to his dependents' essential needs as well as his own personal ones, not to relieve him of familial obligations and destroy what may be the family's last and only security, short of public relief.
Id. (emphasis added).
[16] As well as giving SSI benefit recipients, as argued by MDHS, "carte blanche to procreate without any regard to a child's support and upbringing." In the case sub judice, such disregard is evidenced by Barnes's inability to recall the name of his two-year-old daughter at trial.
[17] The Declaration of Independence ¶ 1 (U.S. 1776).
[18] The child's mother receives Social Security benefits under Title IV-D.