BARNES, J.,
for the Court:
¶ 1. This case arose when Ponta Properties Inc. (Ponta)[1] filed a complaint in the Lauderdale County Chancery Court in May 2005 for a partition of real property against A. Phillip Brown II (A.P. Brown), Charles Naylor, Crystal Naylor, Rosalynn Naylor, Glen Brown, Brenda Brown Gordon, Billy Jean Brown, Dorothy Jean Love, Arthur Love, and Alfreda King (Defendants), who each owned an interest in the subject property. Tate contends that all of the Defendants but one, Brenda Gordon, were properly served with process *746 under Mississippi Rule of Civil Procedure 81, either personally or by notice of publication, and summoned to appear at the chancery court for a hearing in July 2005. However, only one Defendant appeared at the hearing. No action was taken at the hearing, and no order of continuance was filed. Five years later, in August 2010, realizing Brenda Gordon had mistakenly not been served with a summons, Tate personally served her with a summons to appear at a hearing on November 22, 2010. She appeared pro se and claimed the hearing was unfair; so the chancellor continued the hearing until January 81, 2011. In January, neither Brenda Gordon nor any of the other Defendants appeared at the hearing to contest the action; therefore, the chancery court entered a judgment against them, ordering the property partitioned by sale. The remaining Defendants in the action filed a motion to reconsider, objecting to the chancellor’s ordering a partition by sale instead of a partition in kind. Additionally, they claimed that they had not been properly served or given notice of the proceedings. The chancery court overruled the motion, and the Defendants appealed.
¶ 2. Rule 81 provides special procedures for certain types of proceedings enumerated in Rule 81(d)(l)-(2), which includes partition actions. For these special proceedings, Rule 81(d)(3)-(4) provides: “Complaints and petitions filed ... shall not be taken as confessed.... No answer shall be required ... but any defendant or respondent may file an answer or other pleading or the court may require an answer if it deems it necessary to properly develop the issues.” Regarding the proper procedure for a summons, Rule 81(d)(5) provides that upon filing the action:
summons shall issue commanding the defendant or respondent to appear and defend at a time and place, either in term time or vacation, at which the same shall be heard. Said time and place shall be set by special order, general order or rule of the court. If such action or matter is not heard on the day set for hearing, it may by order signed on that day be continued to a later day for hearing without additional summons on the defendant or respondent. The court may by order or rule authorize its clerk to set such actions or matters for original hearing and to continue the same for hearing on a later date.
(Emphasis added.) We find the entry of judgment against these Defendants was in error as no new Rule 81 summons was issued; accordingly, we reverse the judgment and remand the case to the chancery court for further proceedings consistent with this opinion.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 3. On May 20, 2005, Ponta filed a complaint for partition of real property against the Defendants, each of whom at that time owned an undivided interest in the subject property. Ponta claimed that the property was not susceptible to partition in kind; instead, a partition by sale should be ordered, whereby the court would sell the property and partition the proceeds among the owners in accordance with their various ownership interests.
¶ 4. On June 1, 2005, a summons was issued under Rule 81 for the out-of-state Defendants, A.P. Brown, Glen Brown, Billy Jean Brown, Dorothy Jean Love, Arthur Love, and Alfreda King, who were given notice to appear and defend at the Lauderdale County Chancery Court on July 20, 2005.[2] Notice of the action was *747 also published in a local newspaper, The Meridian Star, three times in June 2005. Also, on June 1, Rule 81 summonses for the July hearing were issued to in-state Defendants Charles Naylor, Crystal Nay-lor, and Rosalynn Naylor as well. The record indicates that all of the in-state Defendants were served with process on June 3, 2005. Because of a mistake later admitted by Tate, another in-state Defendant, Brenda Brown Gordon, was not issued a summons for the July 20 hearing. On July 20, 2005, the hearing was held on the partition, but the only defendant to appear was A.P. Brown, who was represented by counsel. However, no action was taken at the hearing,[3] and no continuance was filed.
¶ 5. The chancery court docket shows no activity in the case for over five years, until August 2010, when a Rule 81 summons was personally served on Brenda Gordon, advising her of a hearing on November 22, 2010. Additionally, on October 5, 2010, a certified letter was sent to A.P. Brown[4] from counsel for John Tate Jr., notifying Brown that Tate had purchased Ponta’s interest in the property, as well as the interests of Arthur Love, Billy Brown, and Alfreda King,[5] giving Tate an undivided two-thirds ownership interest in the property. The letter also advised A.P. Brown, as well as three other defendants,[6] that there would be a hearing on November 22, 2010 in the chancery court, where Tate would seek to obtain an order to sell the property at the courthouse to the highest bidder, and for the proceeds to be divided among the owners. But, Tate issued no formal summonses for this hearing to any of the other Defendants except Brenda Gordon.[7]
¶ 6. At the November 22, 2010 hearing, Brenda Gordon was the only defendant to appear.[8] An agreed order was entered continuing the November 2010 hearing until January 31, 2011. Also, Tate filed motions, applications, and supporting affidavits for default judgments against Defendant A.P. Brown for failure to appear at the November 22, 2010 hearing, and against Defendants Dorothy Love and *748 Glen Brown for failing to appear at the July 20, 2005 hearing.[9] The chancery clerk made an entry of default against these Defendants under Mississippi Rule of Civil Procedure 55(a).
¶ 7. The record shows no formal summonses were issued to any Defendants for the January 31, 2011 hearing, and not surprisingly, no Defendants appeared. The chancellor entered a judgment ordering partition of the property by sale on March 25, 2011. He found that the remaining Defendants — A.P. Brown, Glen Brown, Brenda Gordon, Charles Naylor, Crystal Naylor, Rosalynn Naylor, and Dorothy Love — had been properly served with process, and that the only objection to the sale was by Brenda Gordon during her court appearance in November 2010. On February 11, 2011, Brenda Gordon filed a pro se motion for reconsideration because the order “was unfair and unconstitutional.” The chancellor overruled her motion as untimely under Mississippi Rule of Civil Procedure 59.
¶ 8. On February 22, 2011, Leslie Gates, counsel on behalf of all of the Defendants, filed a “motion to set aside default and default judgment,”[10] and for relief from the January 2011 judgment under Mississippi Rule of Civil Procedure 60, arguing that, under the circumstances, a partition in kind would be more practical than a partition by sale. Also, out-of-state Defendants A.P. Brown, Glen Brown, and Dorothy Love “specially appeared” in the motion, contending that they had not been properly served with a summons; thus, the chancery court did not have jurisdiction to enter judgment against them. These Defendants argued that Mississippi law authorizing publication summonses in this case was unconstitutional, and that although copies of the summonses were mailed to them, they did not receive actual notice of the action.[11] Also, regarding the alleged default of these three Defendants, it was noted that while Tate published notice for them to appear in chancery court in July 2005, the action was not heard at that time, and there was no order of continuance entered in July 2005. Further, the motion noted that there were no additional court notices to Dorothy Love or Glen Brown, though A.P. Brown did receive notice to appear in court on November 22, 2010. The Defendants argued that under Rule 81, the original summonses lapsed when there was no order entered and no continuance granted on the original hearing date of July 20, 2005; thus, in the absence of another summons, the chancery court lost jurisdiction over Dorothy Love, Glen Brown, and A.P. Brown.
¶ 9. A hearing was held, and on March 1, 2011, the chancery court overruled the motion to set aside the default judgment and other relief, finding that all of the Defendants were properly served with process. The Defendants appealed. On March 3, 2011, the property was sold at public auction to Tate, who was the highest bidder, for the sum of $48,350.
ANALYSIS
¶ 10. The Defendants make several arguments against the propriety of the chancery court ordering the property’s *749 partition by sale. However, because we reverse and remand in favor of the Defendants, we do not find it necessary to discuss each of their arguments. Generally, the Defendants argue that the final judgment was actually a “form of’ default judgment against them, in particular Dorothy Love, Glen Brown, and A.P. Brown. They claim it was fundamentally unfair to enter a default in this situation because no answer is required under Rule 81, and they were not summoned to appear on a certain return date. Additionally, there was no evidence that at the July 20, 2005 hearing the Defendants were called in court, the hearing was continued, or any action was taken. Furthermore, Tate requested the default judgment five years later. The pertinent issue, however, is whether, in the absence of an order entered at the hearing or a continuance after a Rule 81 summons has been issued, the Defendants should have been reserved with a new Rule 81 summons. We find that they should have been.
¶ 11. First, we note the chancellor’s final judgment was not a default judgment, but a judgment on the merits. Partition actions are governed by the special procedures of Rule 81(d). For Rule 81 matters, complaints and petitions may not be taken as confessed, and no answer is required unless ordered by the court. M.R.C.P. 81(d)(3)-(4). In Saddler v. Saddler, 556 So.2d 344, 345 (Miss.1990), the Mississippi Supreme Court noted that in Rule 81 cases a default judgment is improper because no answer is required to be filed. Additionally, Rule 81(d)(5) requires the issuance of a summons commanding the defendant to appear and defend at a time and place that the action is to be heard, thereby precluding default judgment. Saddler, 556 So.2d at 346. Here, there was no “default” language in the order. Regardless, a default judgment is not allowed in this case, even though Tate completed the first of a two-step procedure for default against Dorothy Love, Glen Brown, and A.P. Brown in October and November 2010.[12]
¶ 12. Second, Tate should have served a new Rule 81 summons on the remaining Defendants for the November 22, 2010 hearing. Instead, the only notice of the hearing was a letter dated October 5, 2010, from Tate’s counsel to A.P. Brown, who appeared pro se. It was also intended that the letter give notice to Deborah Brown, Glen Brown, and Brenda Gordon, all of whom Tate’s counsel said A.P. Brown “represented.”[13] However, the notice does not comply with Rule 81’s procedures for summons. It was necessary that another formal Rule 81 summons be issued against all of the remaining Defendants.
¶ 13. Rule 81(d)(5) provides that “[i]f such action or matter is not heard on the day set for hearing, it may by order signed on that day be continued to a later day for hearing without additional summons on the defendant or respondent.” However, the Mississippi Supreme Court has held that a central consideration under Rule 81 is the adequacy of the notice of the date, time, and place of the hearing. Vincent v. Griffin, 872 So.2d 676, 678 (¶ 5) (Miss.2004). In Vincent, a former wife filed a motion *750 for contempt, seeking to enforce past due child support. Id. at 677 (¶ 1). A Rule 81 summons was issued for David Vincent informing him of the time and date of the hearing. Vincent appeared (pro se), but the case was continued twice, after which Joan Griffin’s counsel sent Vincent a letter and agreed order to set a trial date. Vincent, 872 So.2d at 677 (¶¶ 2-3). Vincent never responded to this letter. Id. at (¶ 3). Griffin’s attorney filed a motion for notice of the trial date, and the chancellor set the date. Id. at (¶¶ 3-4). Vincent claimed he never received notice of the trial date, and he did not appear at trial. Id. at (¶ 4). A contempt judgment was entered against Vincent. Id. This Court originally affirmed the chancellor’s judgment, and interpreted Rule 81(d)(5) to suggest that “no further notice is required once a defendant has been served with a Rule 81 summons.” Id. at 678 (¶ 5) (quoting Vincent v. Griffin, 852 So.2d 620, 623 (¶6) (Miss.Ct.App. 2003)). The supreme court reversed, holding that in that Rule 81 action, service on Vincent by mail of notice of the hearing did not satisfy the requirements of due process under the circumstances, and an additional Rule 81 summons for Vincent was necessary. Vincent, 872 So.2d at 678 (¶¶ 6, 8). Importantly, the supreme court noted that Vincent “was not given notice of a definite hearing date at the time of the last continuance.” Id. at (¶ 6). He did not appear, and a judgment was entered against him; but he was denied the opportunity to challenge the ruling. Id. The supreme court concluded that “[t]he more reasonable interpretation of [Rule] 81(d)(5) is that an additional summons is not required where by order entered that day the proceedings are continued to a later date certain.” Id. at (¶ 8) (emphasis added).
¶ 14. The supreme court in Vincent cited to Caples v. Caples, 686 So.2d 1071 (Miss.1996), in support of its holding. Vincent, 872 So.2d at 678 (¶ 7). In Capíes, the supreme court also ruled that “[t]he proper procedure under Rule 81 would have been to serve [the respondent] an additional Rule 81 summons.” Capíes, 686 So.2d at 1074. Capíes dealt with a motion for modification of joint child custody. Id. at 1072. Even though the respondent/husband was served with an improper Rule 81(d) summons that did not contain the time and place of the hearing and required a written answer to the complaint, he did initially appear in court. Id. at 1074. However, the hearing was recessed indefinitely due to a pending jurisdictional decision in another court, and there was no discussion of the merits. Id. at 1072,1074. Several months later, the matter was reconvened; but the husband did not appear, and the chancellor entered judgment against him. Id. at 1072. On appeal, the husband argued that he was not given notice, resulting in a denial of due process. The supreme court found there was no order setting a specific date for further proceedings entered on the date the hearing was continued; thus, the husband should have been served with another Rule 81 summons. Id. at 1074.
¶ 15. Additionally, in Serton v. Serton, 819 So.2d 15, 21 (¶24) (Miss.Ct.App.2002), this Court applied the precedent set in Capíes and stated: “Service by mail, without an accompanying summons issued in accordance with the dictates of Rule 81(d)(5), does not provide the requisite service of process which will enable the court to act.” (Citing Capíes, 686 So.2d at 1074). Relatedly, this Court reiterated the holding of Vincent in its discussion of the special requirements of a Rule 81 summons in Bailey v. Fischer, 946 So.2d 404, 407 (¶ 11) (Miss.Ct.App.2006), stating: “If no such order is entered [on the day of the initially scheduled hearing], there should be a new Rule 81 summons.” (Citing Vin *751 cent, 872 So.2d at 678 (¶8)). “The clear purpose of Rule 81 is to give notice of new proceedings in dormant litigation in the manner that the state Supreme Court views as proper form and procedure to satisfy constitutional due process.” Bailey, 946 So.2d at 408 (¶ 18).
¶ 16. As in Vincent and Capíes, here, initial Rule 81 summonses were served on all of the Defendants, and one Defendant appeared. However, the initial hearing was continued or recessed without addressing the merits of the case and without entry of an order or continuance. Thus, the appearing Defendant would have no further notice of another hearing date. Additionally, in Vincent, as here, opposing counsel sent a letter to the respondent/defendant as notice of a new trial/hearing date. However, notice by letter is inadequate under the formal summons procedures of Rule 81(d)(5).
¶ 17. If the July 20, 2005 hearing had gone forward, or an order had been entered continuing the hearing to a later date certain, no additional Rule 81 summonses would have been necessary, and the January 2011 judgment would stand. However, when the case was not addressed on the merits, and there was no type of order or continuance entered, the chancellor should have required additional service of Rule 81 summonses on all of the remaining Defendants before holding the November 22, 2010 hearing. Because of the lack of notice to the remaining Defendants, the judgment for partition by sale must be reversed, and the case remanded to the chancery court.
CONCLUSION
¶ 18. For the above reasons, we reverse the judgment, and remand the case to the chancery court for proceedings consistent ■with this opinion.
¶ 19. THE JUDGMENT OF THE LAUDERDALE COUNTY CHANCERY COURT IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR.

. John Tate Jr. later bought Ponta’s interest in the property.

. The record indicates that the notices were sent via certified mail, postmarked June 1, *747 2005, from the Lauderdale County Chancery Clerk’s Office to each of the Defendants. Glen Brown’s and A.P. Brown’s notices were returned "not deliverable as addressed.” Dorothy Love’s and Arthur Love's notices were stamped "unclaimed." However, Defendants Billy Brown and Alfreda King accepted delivery of their mailing. Ponta claims that all service of process for the nonresident Defendants was completed by July 6, 2005.

. As indicated in the chancery court’s March 2, 2011 order, there are no transcripts of this hearing or any of the other subsequent proceedings.

. The record shows A.P. Brown signed for receipt of this letter on October 8, 2010.

. Since selling their interests in the property to Tate, these three individuals are no longer a part of this action.

.The letter stated that A.P. Brown had advised Tate that he was representing himself, as well as Defendants Glen Brown, Brenda Gordon, and Deborah Naylor. In their brief, the Defendants in this appeal explained that Deborah Naylor, who is also mentioned in some other motions by mistake, had no interest in the subject property because she was deceased before the complaint was filed. She was not named as a Defendant in the complaint because at the time of the complaint’s filing, Deborah’s interest had passed to her husband, Charles Naylor, and her children, Rosalynn and Crystal Naylor.

. Tate admits no formal Rule 81 summons was issued to A.P. Brown for this hearing, as he had already made a personal appearance in court at the July 20, 2005 hearing.

. Tate claims Brenda Gordon appeared at this hearing pro se and requested time to obtain an attorney to represent her in the case, hence the continuance.

. Brenda Gordon and the three Defendants who had already sold their interest in the property to Tate — Billy Brown, Arthur Love, and Alfreda Bang — did not have a motion for a default judgment filed against them.

. In the January 2011 order, the chancellor did not specifically enter a default judgment against any of the Defendants, but the Defendants considered it as one.

.As stated earlier, the record shows these three Defendants' notices were by certified mail and returned undelivered to the chancery court.

. Obtaining a default judgment under Mississippi Rule of Civil Procedure 55 is a two-step process. Billy G. Bridges & James W. Shelson, Warner’s Griffith, Mississippi Chancery Practice § 256b (2000 ed.). "First, entry of default must be entered by the clerk of the court,” which is obtained through a motion and supporting affidavits. Then, "the plaintiff must obtain a default judgment from the court.” Id. Here, while Tate filed the proper motions and affidavits, the chancery court never entered a default judgment.

. There is no evidence that A.P. Brown was an attorney, and that he could represent anyone in court other than himself.