## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01117-COA

IN THE MATTER OF THE DISSOLUTION OF              APPELLANT
THE MARRIAGE OF JAMES CATLIN TULLOS
AND JESSICA LYNN TUCKER TULLOS:
JESSICA LYNN TUCKER TULLOS

v.

JAMES CATLIN TULLOS                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/19/2016 |
| TRIAL JUDGE: | HON. GERALD MARION MARTIN |
| COURT FROM WHICH APPEALED: | SMITH COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | W. TERRELL STUBBS |
| | LAUREN ELIZABETH CAVALIER |
| ATTORNEY FOR APPELLEE: | RAYMOND PATRICK TULLOS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 11/07/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     Jessica Tullos appeals the order modifying child custody and support of her minor children. The order awarded her former husband, James Tullos, physical custody of both minor children and required Jessica to pay child support. It is from that order that this appeal is taken.

### FACTS AND PROCEDURAL HISTORY

¶2.     Jessica and James were married on September 4, 2004. Two children were born of that union. A joint complaint for divorce was filed by James and Jessica on December 17,

2013. On March 14, 2014, a judgment of divorce was entered for the parties. Jessica was given physical custody of the minor children, and James was given visitation and required to pay $1,000 per month in child support.

¶3. On August 28, 2015, James filed a petition to modify the judgment, requesting that the chancery court award him physical custody of the minor children and require Jessica to pay child support. James alleged that Jessica was using illegal drugs in the presence of their children. Jessica was served with the petition and a summons on September 4, 2015, requiring that she appear at the Covington County Courthouse in Collins, Mississippi. The original hearing date was set for September 29, 2015.

¶4. On September 29, 2015, the court entered an order continuing the case and resetting it for trial, and the hearing was continued to October 15, 2015, at 9:30 a.m. in the Smith County Courthouse in Raleigh, Mississippi. Raymond Tullos, James's attorney, and Jessica, who was pro se, signed the first order continuing the matter. On October 15, 2015, the trial was continued by order of the court to December 10, 2015, at 9:30 a.m. in the Smith County Courthouse in Raleigh. Jessica did not sign that order, and the record is unclear whether Jessica was present.

¶5. On December 10, 2015, the chancery court entered another order continuing the case to February 1, 2016, at 9:30 a.m. in the Smith County Courthouse in Raleigh. Jessica did not sign the order, and the record does not reflect whether she was present at the hearing. Moreover, only the chancellor signed the order continuing the matter. An order appointing April Taylor Bryant as guardian ad litem (GAL) for the minor children was also entered on

2

February 1, 2016. On that same day, the chancellor signed an order continuing the case to March 30, 2016. On March 30, 2016, the fifth and final order of continuance was signed by the chancellor, continuing the hearing to May 19, 2016. While the order was signed, it was not filed until March 31, 2016. The final order of continuance was signed by James's attorney and the chancellor but not Jessica, and the record is unclear if Jessica was present at the hearing.

¶6. On May 19, 2016, a hearing on the petition to modify custody was held. James, his attorney, and the GAL were present during the hearing, but Jessica was not. James testified that Jessica had moved to North Dakota with their son. James stated that when he exercised his visitation rights and picked up the children, sometimes Jessica was not at home and the children had a dirty physical appearance. According to James, Jessica was using illegal drugs and had used drugs in front of their children. James stated that though Jessica had not used drugs in his presence, he observed Jessica inebriated in the presence of their children when he picked them up for visitation. James also stated that Jessica's mother, father, and stepmother called him and asked that he not return the children to Jessica until they got Jessica help for her drug use.

¶7. The GAL testified that she believed that it was in the best interest of both minor children to reside with James. According to the GAL, after she requested the younger child B.J.'s[1] school records, his school counselor informed her that he had missed a number days. The GAL also testified that the school counselor stated that B.J.'s education had been

_____

[1] We use the minor's initials in place of his name.

3

impacted by Jessica's constant relocation. The GAL stated that when she spoke with Jessica regarding B.J.'s welfare, Jessica made false statements about James's visitation and also gave the GAL an incorrect physical address. When the GAL attempted to call Jessica back, she could not reach her. The GAL left a voicemail message informing Jessica that she would be visiting both James's and Jessica's homes. According to the GAL, she informed Jessica about the final hearing as well. The GAL testified that after she could not reach Jessica, she contacted B.J.'s school counselor and was informed that Jessica had moved.

¶8. After the testimony concluded, the chancellor ruled from the bench that he found a substantial material change that adversely impacted the minor children. Following an *Albright* analysis,[2] the court found that it was in the best interests of the minor children to reside with James. However, the chancellor did not sign an order reflecting his ruling on that day. On July 1, 2016, another chancellor in the same judicial district signed an order, nunc pro tunc as of May 19, 2016, altering the final judgment and awarding James physical custody of both minor children. It is from that order that Jessica appeals. On appeal, Jessica argues that the chancellor erred in entering a final judgment against her because she was not properly noticed pursuant to Rule 81(d) of the Mississippi Rules of Civil Procedure. Finding no error, we affirm.

**STANDARD OF REVIEW**

¶9. This Court will not "interfere with the chancellor's findings of fact unless they were manifestly wrong [or] clearly erroneous, or an erroneous legal standard was applied."

---

[2] *Albright v. Albright*, 437 So. 2d 1003 (Miss.1983).

4

*Caplinger v. Caplinger*, 108 So. 3d 992, 995 (¶6) (Miss. Ct. App. 2013). However, the chancery court's interpretation and application of the law is reviewed under a de novo standard. *Tucker v. Prisock*, 791 So. 2d 190, 192 (¶10) (Miss. 2001).

## DISCUSSION

¶10. Mississippi Rule of Civil Procedure 81(d) provides special procedures for hearings on modification or enforcement of custody. M.R.C.P. 81(d)(2). When a modification action is filed, notice of the action and the procedures for continuances are governed as follows:

> [S]ummons shall issue commanding the defendant or respondent to appear and defend at a time and place, either in term time or vacation, at which the [action or matter] shall be heard. Said time and place shall be set by special order, general order, or rule of the court. If such action or matter is not heard on the day set for hearing, it may by order signed on that day be continued to a later day for hearing without additional summons on the defendant or respondent. The court may by order or rule authorize its clerk to set such actions or matters for original hearing and to continue the same for hearing on a later date.

M.R.C.P. 81(d)(5).

¶11. "[T]he Mississippi Supreme Court has held that a central consideration under Rule 81 is the adequacy of the notice of the date, time, and place of the hearing." *Brown v. Tate*, 95 So. 3d 745, 749 (¶13) (Miss. Ct. App. 2012) (citing *Vincent v. Griffin*, 872 So. 2d 676, 678 (¶5) (Miss. 2004)). However, if a proper summons is given that notifies the other party of a new controversy that has arisen and of the date, time, and place for a hearing, the rule itself provides that an order entered on the day of the initially scheduled hearing obviates the need for any new summons for a hearing actually held on the later date. *Bailey v. Fischer*, 946 So. 2d 404, 407 (¶11) (Miss. Ct. App. 2006) (citing M.R.C.P. 81(d)(5)). If no such order is entered, there should be a new Rule 81 summons. *Id.*

5

¶12. Though there were five continuances, all orders were signed by the chancellor on each respective hearing date. Therefore, the initial summons was preserved. Jessica argues that because she was not provided a copy of the four subsequent orders continuing the case and resetting the trial, a new Rule 81 summons should have been issued. Caselaw does not support this contention. The rule states that if the matter is not heard on the day it is set, then an order entered on that day may continue the cause to a later date without a new summons being issued. *Sanghi v. Sanghi*, 759 So. 2d 1250, 1259 (¶32) (Miss. Ct. App. 2000) (citing M.R.C.P. 81(d)(5)).

¶13. Jessica had notice of the first continuance, and the record does not reflect that she attended that hearing. Jessica also admits that she may have had actual notice of the final hearing through the GAL's statement regarding the hearing, but she contends that actual notice is insufficient to cure defective process. We agree. "Actual notice does not cure defective process." *Pearson v. Browning*, 106 So. 3d 845, 852 (¶39) (Miss. Ct. App. 2012). "[J]urisdiction is not obtained by a defendant's informally becoming aware that a suit has been filed against him." *Id.* Nevertheless, Jessica was aware of a pending custody matter, evidenced by her initial appearance at the first hearing and her signature on the first order of continuance. A central tenet of Rule 81 is adequate notice of a pending legal matter, and Jessica was given notice at the inception of the custody matter.

¶14. Therefore, we do not agree with Jessica's argument that a Rule 81 summons should have been reissued because she was not notified of subsequent court-ordered continuances. The summons was preserved with each signed order of continuance. Moreover, each order

6

provided a day certain for the next hearing. Though the final order of continuance was not filed until the day after the hearing, the summons was still preserved because the trial judge signed the order on the day of the hearing. Rule 81 states "if such action or matter is not heard on the day set for hearing, it may by order signed on that day be continued to a later day for hearing without additional summons on the defendant or respondent." M.R.C.P. 81(d)(5). Accordingly, we find that an additional summons was not required, and Jessica was adequately notified of the custody matter. Finding no error, we affirm.

¶15. **AFFIRMED**.

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. TINDELL, J., NOT PARTICIPATING.**